Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/28/2022 09:07 AM CST

Marcia A. Kauk, appellant, v.
Randall G. Kauk, appellee.
___ N.W.2d ___

Filed November 5, 2021.    No. S-20-867.

1. **Divorce: Child Custody: Child Support: Property Division: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. ____: ____. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

5. **Divorce: Property Division.** In a dissolution action, the equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property to the party who brought the property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. And the third step is to calculate and divide the net marital estate equitably between the parties.

6. ____: ____. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.

7. **Divorce: Property Division: Proof.** The burden of proof rests with the party claiming that property is nonmarital.

8. \_\_\_\_: \_\_\_\_: \_\_\_\_. The burden to show that a debt is nonmarital is on the party making that assertion.

9. **Divorce: Property Division.** In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties.

10. \_\_\_\_: \_\_\_\_. In a dissolution action, there is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.

11. **Equity: Parties: Contracts.** All persons interested in the contract or property involved in a suit, or whose interests therein may be affected by the decree in equity, are necessary parties.

12. **Contracts: Statute of Frauds: Proof.** In order to establish that an oral contract falls within the Neb. Rev. Stat. § 36-106 (Reissue 2016) exception to the statute of frauds found in Neb. Rev. Stat. § 36-103 (Reissue 2016), the proponent of the contract must establish by clear, satisfactory, and unequivocal evidence the terms of the contract, that the acts done in the performance thereof are referable solely to that contract, and that the acts performed are of such a nature that nonperformance of the contract by the other party would amount to a fraud upon the proponent.

13. **Evidence.** Admissions are words and conduct of a party opponent offered as evidence against him or her.

14. **Trial: Evidence.** An extrajudicial admission is simply an item of evidence in the mass of evidence adduced during a trial, admissible in contradiction and impeachment of the present claim and other evidence of the party making the admission.

15. **Circumstantial Evidence: Proof.** Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact.

16. **Evidence: Proof.** A finder of fact may draw reasonable inferences from the facts and circumstances proved.

Appeal from the District Court for Howard County: KARIN L. NOAKES, Judge. Affirmed.

Mark L. Eurek, of The Law Office of Eurek & Peterson, L.L.C., for appellant.

John B. McDermott, of Wolf, McDermott, Depue, Sabott, Butz & Porto, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

Marcia A. Kauk appeals from a marital dissolution decree, arguing the court erred in its marital classification determinations and in awarding Randall G. Kauk the marital homestead acreage. We find no abuse of discretion. Most of the issues turn on credibility assessments where we give weight to the district court's findings. We cannot say that the court's ultimate division was unreasonable or unfair. Therefore, we affirm the decree.

## BACKGROUND

Marcia and Randall were married for 34 years. Marcia is a retired kindergarten teacher, and Randall is a farmer. Prior to separation, the parties lived on an acreage on the corner of a quarter section of real estate that Randall farmed. In 2018, Randall told Marcia that he was "done" and moved into a different house. Marcia then filed for dissolution of the marriage.

During the proceedings, the parties stipulated to the value and division of most of the parties' property and debts. The district court conducted a trial regarding the remaining issues relating to division of property and debts.

Following the trial, the court entered a decree. Pertinent to this appeal, the court decided three issues: (1) whether a marital asset resulted from payments made during the marriage regarding a quarter section of real estate, (2) whether crop-related expenses were marital expenses because they related to crops grown in 2018 (2018 crops) or were nonmarital because they stemmed from those grown in 2019, and (3) how the marital homestead acreage should be allocated. Each will be discussed in turn.

Real Estate of Kauk Family L.L.C.

The district court determined that Randall's payments regarding a quarter section of real estate were rental payments and therefore were not marital assets. Before the divorce, Randall farmed this land and made yearly payments to Kauk Family L.L.C. (LLC), which owned the land. The LLC's members consisted of Randall and his siblings. They had inherited their membership rights from their parents.

Marcia argued that Randall's payments should be included in the marital estate, because they were made pursuant to a land installment contract. She did not seek the specific performance of the contract. Instead, Marcia sought the payments to be included in the marital estate for purposes of equitable division.

Marcia presented two unsigned contracts that she asserted were drafted and agreed to by the LLC and Randall—a deed of trust agreement from 2013 and a land installment contract from 2015. The drafting attorney's correspondence in 2015 noted that the parties preferred to structure the transaction as a land installment contract. The terms of the land installment contract stated that Randall agreed to purchase the property from the LLC for $612,000. It mandated that Randall pay $100,000 as a downpayment and make yearly payments thereafter of $40,577.17. The contract noted that Randall had already paid $202,000 to the LLC (the downpayment and subsequent yearly payments). The contract also required Randall to pay real estate taxes for 2015 and subsequent years and to repay the LLC $16,755.32 for the 2012, 2013, and 2014 property taxes.

At trial, both Randall and his sister (a member of the LLC) authenticated the documents and admitted that the parties originally contemplated for the LLC to sell the real estate to Randall. Randall testified that he paid the $100,000 downpayment and made three yearly payments of $40,577.17, but he denied making an additional $102,000 payment that was reflected in the land installment contract. Randall also testified that he never paid the property taxes for the real estate.

However, Randall and his sister refuted the enforceability of the contracts, because neither they nor their siblings ever signed either contract. Further, Randall's sister explained that they abandoned the plan for Randall to purchase the property after he failed to make payments and pay the property taxes, which forced the LLC to pay them. At that point, Randall and the LLC agreed to a rental agreement, applying all of Randall's payments as "rent." Randall testified that he has paid the LLC $35,000 in yearly rent since 2018.

The court found that the contracts were not enforceable because they were barred by the statute of frauds, explaining that neither contract was signed nor was there sufficient evidence that the parties partly performed either contract. The court emphasized that Marcia failed to prove the existence of an oral contract whose terms were clear, satisfactory, and unequivocal. Further, the court found that the parties had abandoned any plans for a potential oral purchase agreement, and instead, they had allowed Randall to rent the real estate. Therefore, the court concluded that the payments made toward the real estate were not considered a marital asset.

## CROP EXPENSES AND JORGENSEN PAYMENT

The parties disputed the valuation of the 2018 crops. Marcia presented testimony from an accountant who reviewed the farm's bank statements to calculate the total revenue generated from the 2018 crops. The court agreed with Marcia's valuation of the crops, but deducted $46,158.44 from the valuation. The court's deduction was for four payments that Randall made in the spring of 2019—two payments for seed ($3,477.23 and $26,061.10), one for fuel ($3,736.88), and one for land ($12,883.23) the parties referred to as the "Jorgensen farm."[1] The court found that these payments resulted from growing the 2018 crops and characterized the Jorgensen payment as rent.

Marcia argued that it was more reasonably inferable that the fuel and seed payments were for crops grown in 2019,

---

[1] See brief for appellee at 10.

which were not marital assets. Further, Marcia claimed that the Jorgensen payment was actually for real estate that she and Randall were purchasing. She points to three items of real estate and a corresponding marital debt shown on the joint property statement, which were allocated by the court to Randall.

## Marital Acreage

Finally, the court awarded Randall the marital acreage. The marital acreage is a 7-acre tract of land that Marcia and Randall owned, which features the marital home. While Randall presented no testimony regarding the acreage, Marcia's counsel stated at the beginning of the trial that both parties sought the marital acreage.

The court stated that it "underst[ood Marcia's] attachment to the home she has made over the last 30 years." It summarized Marcia's testimony regarding her use of the home and her plans for the future. Although the court noted Randall's argument that his workshop and machinery were located nearby, the parties essentially conceded at oral argument that the record contains no direct evidence regarding the location of Randall's workshop and machinery.

The court explained that it was "mindful" of an unpublished decision of the Nebraska Court of Appeals.[2] In the case cited by the court, the appellate court modified a decree which had awarded a tract of land, including the marital house, to the nonfarming spouse.[3] The district court's decree here characterized that appellate decision as having determined that awarding the home property to the nonfarming spouse would needlessly interfere with the farming spouse's operation, based upon the home property's location near tracts of real estate used to feed and pasture cattle and which included a barn, outbuildings, and equipment used in the farming operation.

---

[2] See *Tierney v. Tierney*, No. A-18-338, 2019 WL 2509047 (Neb. App. June 18, 2019) (selected for posting to court website).

[3] See *id.*

Thus, "[i]n light of the [Court of Appeals'] decision, and after considering the evidence presented," the court here awarded "the marital home and acreage" to Randall. We note that no precise legal description of the disputed tract appears in the record.

Marcia filed a timely appeal, which we moved to our docket.[4]

## ASSIGNMENTS OF ERROR

Marcia assigns, restated and reordered, that the district court abused its discretion by (1) "failing to include in the marital estate any amount for the contract or payments made by [Randall] with marital assets toward purchase of real estate"; (2) classifying four payments as payments of marital debts in valuing marital assets; and (3) awarding the marital acreage, including the home, to Randall.

## STANDARD OF REVIEW

[1,2] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[5] This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[6] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[7]

[3] When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[8]

---

[4] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

[5] *Tierney v. Tierney*, 309 Neb. 310, 959 N.W.2d 556 (2021).

[6] *Id.*

[7] *Id.*

[8] *Onstot v. Onstot*, 298 Neb. 897, 906 N.W.2d 300 (2018).

[4] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[9]

## ANALYSIS

[5] In a dissolution action, the equitable division of property is a three-step process.[10] The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property to the party who brought the property to the marriage.[11] The second step is to value the marital assets and marital liabilities of the parties.[12] And the third step is to calculate and divide the net marital estate equitably between the parties.[13] Here, the parties address three discrete issues within the three-step process.

[6-8] The first two issues contest the district court's determinations regarding the extent to which assets and debts were marital or nonmarital. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.[14] The burden of proof rests with the party claiming that property is nonmarital.[15] Likewise, the burden to show that a debt is nonmarital is on the party making that assertion.[16]

[9,10] The last issue addresses the division of specific assets. In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties.[17]

---

[9] *Tierney v. Tierney, supra* note 5.

[10] *Vanderveer v. Vanderveer, ante* p. 196, 964 N.W.2d 694 (2021).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Higgins v. Currier*, 307 Neb. 748, 950 N.W.2d 631 (2020).

[15] *Doerr v. Doerr*, 306 Neb. 350, 945 N.W.2d 137 (2020).

[16] *Vanderveer v. Vanderveer, supra* note 10.

[17] *Doerr v. Doerr, supra* note 15.

There is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.[18]

## Real Estate of LLC

Marcia first assigns that the court abused its discretion in finding that because the contracts were unenforceable, Randall's payments regarding a quarter section of real estate were rental payments. Marcia argues that parties partly performed the land installment contract, making it enforceable under the statute of frauds.

[11] This argument addresses part of the first of the three steps in the property division process. Marcia was not seeking a decree to enforce a purported contract between Randall and the LLC. The court here would not have had jurisdiction to do so. All persons interested in the contract or property involved in a suit, or whose interests therein may be affected by the decree in equity, are necessary parties.[19] The LLC was not a party to the dissolution action. Thus, the court could not have enforced the purported contract. Rather, we understand Marcia to be attacking the district court's determination that payments made during the marriage were not part of the marital estate because they were properly viewed as rental payments rather than purchase payments. Because the district court's reasoning rested on the requirements of the statute of frauds, we summarize that law.

[12] Neb. Rev. Stat. §§ 36-103 and 36-105 (Reissue 2016) require that contracts for the sale of real estate must be in writing to be enforceable. However, pursuant to Neb. Rev. Stat. § 36-106 (Reissue 2016), an oral real estate purchase agreement is within the statute of frauds if the parties partly

---

[18] *Vanderveer v. Vanderveer, supra* note 10.

[19] *Reed v. Reed*, 277 Neb. 391, 763 N.W.2d 686 (2009).

perform the contract.[20] In order to establish that an oral contract falls within the § 36-106 exception to the statute of frauds found in § 36-103, the proponent of the contract must establish by clear, satisfactory, and unequivocal evidence the terms of the contract, that the acts done in the performance thereof are referable solely to that contract, and that the acts performed are of such a nature that nonperformance of the contract by the other party would amount to a fraud upon the proponent.[21] Here, in effect, Marcia is the proponent of the contract.

Marcia analogizes her claim to *Herbstreith v. Walls*.[22] There, this court affirmed a district court's decree granting specific performance, where the parties had an unsigned written contract and the buyer made payments on the contract and took possession of the property.[23] Marcia asserts that the unsigned land installment contract, Randall's payment history, and his possession of the property provided sufficient evidence that the parties partly performed the contract.

But there is a fundamental difference between our decision in *Herbstreith v. Walls* and the situation here. There, the district court determined that the proponent satisfied his burden of proof. Here, the district court concluded the opposite.

In the dissolution decree, the district court made extensive findings of fact regarding witness testimony. The court explained that Marcia did not satisfy her burden to prove that the terms of the oral contract were clear, satisfactory, and unequivocal. The court credited Randall's and his sister's testimony that he and the LLC never came to complete and final terms on an agreement to purchase the property. Further, the court accepted the testimony that the LLC abandoned its plans for Randall to purchase the real estate after Randall missed payments.

---

[20] See *Halsted v. Halsted*, 169 Neb. 325, 99 N.W.2d 384 (1959).

[21] *Johnson v. NM Farms Bartlett*, 226 Neb. 680, 414 N.W.2d 256 (1987).

[22] *Herbstreith v. Walls*, 147 Neb. 805, 25 N.W.2d 409 (1946).

[23] See *id.*

We give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. The district court did not abuse its discretion in finding no marital value in the LLC's real estate.

## Crop Expenses and Jorgensen Payment

In another part of the first step of the property division process, Marcia next contends that the district court abused its discretion by crediting Randall for four payments he made on marital debt. Marcia presents two arguments. Each will be addressed in turn.

First, she argues that the court should not have credited seed and fuel payments Randall made in 2019 as an adjustment to the value of the 2018 crops. The parties agree that the 2018 crops were marital and that the 2019 crops were not. Thus, if the seed and fuel payments were incurred in producing the 2018 crops, the adjustment was proper. If they were payments toward expenses for crops grown in 2019, no adjustment should have been allowed.

As we noted above, a party claiming that a debt is non-marital bears the burden of proving so. Here, Marcia sought to establish that the seed and fuel payments were made for crops grown in 2019—that is, that the debts paid were nonmarital. Thus, she had the burden of proving so.

Marcia relied solely upon her accountant's opinion to argue that those payments were not related to the 2018 crops. However, the accountant admitted on cross-examination that she did not conduct any research to determine whether the payments were made for debts resulting from the 2018 crops or crops grown in 2019. Instead, the accountant based her opinion solely on the payments' timing and "figured" Randall was paying for expenses related to the crops grown in 2019 rather than paying past due bills.

The district court did not find the accountant's assumptions credible. The court concluded that Marcia failed to prove the fuel and seed payments were nonmarital. We give weight to

the court's credibility assessments. We cannot find that the court abused its discretion in making this finding.

Next, Marcia asserts that Randall should not receive a credit for the Jorgensen payment, because the payment was to purchase a marital asset. Marcia claims that she and Randall were purchasing the Jorgensen farm and that it was included in the parties' stipulated property statement as real estate that Randall was receiving. Marcia argues crediting Randall for the payment was improper as "[Randall] would receive double the benefit because th[e] debt has already been used to reduce the value of the real estate he is receiving."[24]

The joint property statement does not describe any of the real estate using the word "Jorgensen." Nor do any of the other exhibits set forth legal descriptions (even cryptic ones) that would enable us to identify particular items in the joint property statement as "Jorgensen" land.

Whether the payment was for the purchase or rental of the Jorgensen farm was disputed. Marcia primarily relies upon a colloquy between the court and the respective attorneys, during Randall's testimony, which alternatively characterized the payment as a "land payment" and a "[r]ental payment." During the course of the colloquy, Marcia, who was not then testifying, interjected, "That's the land we own." But when she actually testified, both in her case in chief and again in rebuttal, no testimony was elicited regarding the Jorgensen payment.

Marcia also relies on a document that Randall provided to his bank, where Randall listed "Jorgensen Ground" under "Other Real Estate." But in another document provided to the same bank, Randall's projected income and expense schedules listed the Jorgensen payment under the "Rent - Land / Animals" category, along with his $35,000 rent payment on the real estate owned by the LLC.

[13,14] While both documents were included in the evidence, neither was conclusive. Admissions are words and

---

[24] Brief for appellant at 13.

conduct of a party opponent offered as evidence against him or her.[25] But unlike judicial admissions, extrajudicial admissions are not conclusive. An extrajudicial admission is simply an item of evidence in the mass of evidence adduced during a trial, admissible in contradiction and impeachment of the present claim and other evidence of the party making the admission.[26] The statements given to the bank were simply items of evidence in the trial of this matter. They were not binding on the trial court.

Once again, our standard of review permits us to give weight to the district court's resolution of disputed evidence.[27] Doing so, we find the court did not abuse its discretion finding that the Jorgensen payment was a rental payment.

## Marital Acreage

Marcia finally assigns that the court abused its discretion by awarding Randall the marital acreage. Marcia argues that the court incorrectly inferred that an unpublished Court of Appeals decision[28] precluded it from awarding a marital acreage to a nonfarming spouse where the farming spouse maintains a nearby farming operation. Marcia also argues that there was no evidence on the record to support the court's reasoning that Randall should receive the marital acreage because of the home's close proximity to Randall's farming operation.

Without commenting upon the merits of the Court of Appeals' unpublished decision, we believe that Marcia reads both too much and too little into the district court's statements regarding the allocation of the marital acreage to Randall.

The district court did not state that it was *bound* by the Court of Appeals' unpublished decision. A statute authorizes

---

[25] *Anson v. Fletcher*, 192 Neb. 317, 220 N.W.2d 371 (1974).

[26] *Federal Nat. Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 854 N.W.2d 774 (2014).

[27] See *Onstot v. Onstot, supra* note 8.

[28] See *Tierney v. Tierney, supra* note 2.

the Court of Appeals to designate a particular opinion for publication.[29] And the rules of the Nebraska Supreme Court dictate that opinions of the Court of Appeals "which the deciding panel has designated as 'For Permanent Publication' shall be followed as precedent by the courts and tribunals inferior to the Court of Appeals until such opinion is modified or overruled by the Nebraska Supreme Court."[30] But the decision cited by the court here was not designated for permanent publication and was not related to these parties. Consequently, the district court was not obligated to follow the unpublished opinion, and we do not read its decree as doing so. Marcia argues that the district court "ruled that [the unpublished decision] required that the [c]ourt award the marital home and acreage to [Marcia]."[31] In this respect, Marcia reads too much into the district court's decree.

Marcia also reads too much into the part of the explanation summarizing Randall's closing arguments, which are not in our record. "[Randall] argue[d]," the district court stated, that "his workshop and machinery are located on the home site, the home site borders farm ground that he rents from the . . . LLC, and the home site is in close proximity to the other ground he farms." The court also noted his argument that "it would be easier for [Marcia] to relocate than for him to find or build a new work site for his farming operation." However, the court did *not* characterize these arguments as evidence.

[15,16] Marcia also reads too little into the district court's explanation. While Marcia is correct that the record does not show the location of Randall's workshop and machinery, it does include circumstantial evidence of the relationship between the acreage and Randall's farming operation. Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a

---

[29] See Neb. Rev. Stat. § 24-1104 (Reissue 2016).

[30] Neb. Ct. R. App. P. § 2-102(E)(5) (rev. 2021).

[31] Brief for appellant at 17.

proven fact.[32] A finder of fact may draw reasonable inferences from the facts and circumstances proved.[33] The parties' stipulated property statement identified the location of the marital acreage by an imprecise legal description. The statement also set forth cryptic legal descriptions of real estate that Randall farms. The statement described the former as 7 acres in the "SW1/4SW1/4 of 31-15-11" and two of the latter as "SW 1/4 31-15-11" and "NW 1/4 32-15-11." These are obvious references to section, township, and range. From these descriptions, the court could draw inferences of the proximity of the acreage to the farmed tracts and thus to their relationship to Randall's farming operation. Marcia's testimony at trial did not include any suggestion that there was no relationship between the acreage and the farming operation. The district court, in reaching its conclusion, stated that it did so "[i]n light of the [unpublished] decision, and after considering the evidence presented . . . ." Marcia's argument reads too much into the first part of the court's statement and too little into the latter part.

Ultimately, this court reviews the division of property, including the allocation of specific assets, de novo on the record for an abuse of discretion. Marcia does not argue that the overall division of property falls outside of the one-third to one-half range. While we do not minimize Marcia's attachment to or personal feeling about the marital acreage, we cannot say that the district court abused its discretion in awarding the marital acreage, including the house, to Randall.

In passing, we observe that the court's decree included a provision under Neb. Rev. Stat. § 25-1304 (Reissue 2016) giving the decree the effect of a conveyance of real estate. In addition, Neb. Rev. Stat. § 42-372.02 (Cum. Supp. 2020) provides a method for recording of a "Certificate of Dissolution of Marriage" with the register of deeds in the appropriate

---

[32] *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[33] *Id.*

county or counties. The provisions of both statutes may be frustrated by the failure to include a complete and proper legal description in the evidence and ultimately in the decree.

## CONCLUSION

The district court did not abuse its discretion in its marital asset determinations and in awarding Randall the marital acreage. We affirm the court's divorce decree.

Affirmed.