IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PONCE DE CARMONA V. CARMONA VASQUEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARIA ROSARIO PONCE DE CARMONA, APPELLEE,

V.

MARIO CARMONA VASQUEZ, APPELLANT.

Filed April 12, 2022.   No. A-21-573.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Reversed and remanded with directions.

David V. Chipman, of Monzón, Guerra & Associates, for appellant.

No appearance for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Mario Carmona Vasquez appeals the order of the Lancaster County District Court overruling his motion to vacate and/or set aside the default decree of dissolution of marriage obtained by Maria Rosario Ponce De Carmona allegedly without notice to him. We reverse and remand with directions.

## BACKGROUND

Mario and Maria were married in Mexico in 1992. They subsequently moved to Nebraska, and they had twin girls in 2003.

Maria filed a "[p]etition" for dissolution of marriage on November 18, 2020, seeking "full custody" of the parties' children, child support, and an equitable distribution of the parties'

- 1 -

property and debts. Mario was personally served with summons and a copy of the petition on December 15. Mario did not file a responsive pleading.

Two months later, on February 16, 2021, Maria filed a motion for default hearing, wherein she alleged that Mario had been served with summons on December 15, 2020, more than 60 days had passed since service was effectuated, and Mario had not filed an answer in this matter. The "Certificate of Service" states that a copy of the motion was served on Mario by "First Class Mail." Also on February 16, 2021, Maria filed a notice of hearing, stating that a "Default Hearing on Plaintiff's Complaint for Dissolution of Marriage" would be held via Zoom on March 31. The "Certificate of Service" states that a copy of the notice was served on Mario by "First Class Mail."

Maria filed an amended "[p]etition" for dissolution of marriage on March 24, 2021.

A default hearing took place on March 31, 2021. Maria and her counsel appeared via video conference; an interpreter for Maria also participated. Mario did not appear, nor was he represented by counsel. The district court inquired about the "amended complaint." Maria's counsel responded that it was filed to correct the spelling of Mario's surname, but then indicated there was uncertainty about the alleged corrected version based on what Maria was telling him at that time. The court also inquired about whether Mario should have 30 days to respond since the amended document had just been filed on March 24. Maria's counsel responded that the only change was to correct a "[scrivener's] error" and no substantive changes were made. The court concluded that "there might be an issue," but it was "satisfied that [Mario] was aware of these proceedings and chose not to participate."

Maria then proceeded to ask the district court to award her full custody of the parties' twins, who were 18 years old, and to grant Mario parenting time at Maria's discretion. Maria also asked the court to order Mario to pay child support, as set forth in her proposed child support calculation which was received into evidence. According to Maria, three properties in Lincoln, Nebraska, were purchased during the parties' marriage: the parties' residence on Q Street, a rental property on Dudley Street, and another property on Prestwick Road. Printouts from the Lancaster County Assessor's website for all three properties were received into evidence. According to the printouts, the Q Street property had a 2021 preliminary value of $147,000, and Mario was listed as the owner; the Dudley Street property had a 2021 preliminary value of $109,600, and Mario and Maria were listed as the owners; and the Prestwick Road property had a 2021 preliminary value that was cut off on the printout (it shows the 2020 assessed value was $111,800), and it lists the owners as Alicia Vasquez Juarez and Mario. Maria asked the court to award the Q Street and Dudley Street properties to her, and to award the Prestwick Road property to Mario. She also agreed to relinquish any rights she had to the parties' house in Mexico, but her attorney acknowledged that the court probably did not have jurisdiction over that property. Maria asked the court to award three vehicles to her and two vehicles to Mario. She agreed to relinquish any right to Mario's 401K and asked the court to award that solely to Mario. She also asked the court to award her $40,000 of the parties' bank account, which she claimed had about $80,000 in it at that time.

The district court entered a default decree of dissolution on April 1, 2021; the decree was prepared by Maria's counsel. Maria was awarded sole legal and physical custody of the children, and Mario's parenting time was to be at the sole discretion of Maria. Mario was also ordered to pay child support in the amount of $1,125 per month for the two children. Maria was awarded the Q Street and Dudley Street properties, and Mario was awarded "his interest" in the Prestwick Road

property. Maria was awarded three vehicles and Mario was awarded two vehicles. Maria was awarded her 401K and pension as her sole and separate property, and Mario was awarded his 401K as his sole and separate property. Maria was awarded a $40,000 judgment based on her 50 percent share of the money in the bank account that was valued at $80,000 at the time of the default hearing.

On April 28, 2021, Mario filed a "Motion to Vacate and/or Set Aside and Notice of Hearing." He alleged that he did not receive notice of the default hearing, the property distribution was "grossly inequitable" to him, and that allowing his parenting time to be done at the "sole discretion" of Maria was contrary to law. Mario asked that the April 1 judgment be vacated and/or set aside, and that he be allowed to file a responsive pleading.

A hearing on Mario's motion to vacate and/or set aside the judgment was held on May 28, 2021. Mario offered three affidavits in support of his motion: his affidavit, his brother's affidavit, and his mother's affidavit. The district court did not specifically receive these exhibits into evidence, but there were no objections to the exhibits made on the record.

In his affidavit, Mario stated as follows.

> . . . .
>
> 3. On or about December 15, 2020, I was personally served with the summons in this matter.
>
> 4. On February 16, 2021, [Maria] alleges that she sent notice of default hearing in this matter to me by "First Class Mail." **I never received this notice of hearing.**
>
> 5. Throughout all of these proceedings, [Maria] and I continued to cohabitate together. This means that [Maria] most often got our mail. [**Maria**] **never said anything to me about the default hearing until <u>after</u> the hearing was over.**
>
> 6. That upon learning of the judgment entered on or about April 1, 2021, I took immediate action to hire counsel and my attorney provided the attached proposed response to [Maria's] Complaint for Dissolution of Marriage . . . to [Maria's] counsel.
>
> 7. That the judgment entered on or about April 1, 2021[,] awarded [Maria] our unencumbered real property at . . . Q Street . . . (assessed at $147,000) and our unencumbered real property at . . . Dudley Street . . . (assessed at $109,600). I was awarded the property at . . . Prestick [sic] Road . . . (assessed at $124,200) that is jointly owned with my mother and is not my home, but in fact my mother's and father's home. I have never financially contributed in any way to the purchase of the home at . . . Prestick [sic] Road.
>
> 8. I was awarded as a part of the April 1, 2021[,] judgment, my 401(k) through my employer . . . which has about $26,980.00 in it.
>
> 9. . . . In the Decree, my Parenting Time was left up to the discretion of [Maria]. I have a good and strong relationship with my daughter's [sic]; therefore, there is no reason for why [Maria] should determine my parenting time with them.
>
> 10. I am requesting that this Court vacate the Decree entered on April 1, 2021[,] and allow me to file a responsive pleading out of time.

(Emphasis in original.)

The affidavit of Mario's brother is largely irrelevant to this appeal, however the brother did state:

Mario is a citizen of the United States, while both of my parents and myself are legal permanent residents. Therefore, we feel Mario is the best person to put on our financial accounts in case a situation arises where we could not access these accounts due to our statuses in the country.

In her affidavit, Alicia Vasquez Juarez stated as follows.

. . . .

2. I am the mother of [Mario].

3. In March 2016, I purchased the home at . . . Prestwick Road . . . for $90,000. My husband . . . and I paid cash for this home. This is mine and my husband's home. Mario did not contribute in any way financially to the purchases [sic] of this home.

4. My husband and I regularly travel back and forth to Mexico. Because of our travels, we decided to put the home also in the name of Mario so he could help deal with any situations with the home in our absence. Mario has never lived in this home. . . .

5. [Maria] has always known that the home at . . . Prestwick Road . . . is our home and not Mario's home.

. . . .

Maria did not put forth any evidence at the hearing, but asked the district court to "take judicial notice of the brief that I filed in response." The court noted it had "plaintiff's reply brief." However, that brief does not appear in our appellate record.

Both parties made arguments to the district court. Mario's counsel maintained that "[Mario] unequivocally states he . . . never received notice" of the default hearing. Additionally, Mario's counsel argued it was "basically fraudulent" of Maria to allege that Mario should be awarded the Prestwick Road property because both parties were aware that it was Mario's parent's home. Because Maria was awarded the two other properties, "that's unfair and unjust." Counsel further argued that giving Maria discretion over Mario's parenting time was contrary to Nebraska case law. Accordingly, the decree should be vacated and set aside, and Mario should be allowed to proceed in the matter.

Maria's counsel argued that Mario received notice of summons in this case and did not respond within 60 days. "I don't think that sends an appropriate message to the public that they can disregard a court summons, and then later decide that they want to vacate it [because] . . . they dislike it." "I understand [Mario] promptly hired an attorney once the order was final, but what was he doing for those 60 -- over 60 days that he received summons." Counsel also "[did not] think that reopening these proceedings would be in the interest of judicial efficiency just taking consideration that the . . . division [of property] wasn't grossly inequitable."

There was some confusion as to whether Maria's attorney mailed the notice of default hearing to Mario, or whether counsel thought the district court mailed the notice. The court read from Maria's brief:

[O]n or about November 18th[,] 2020, [Maria] filed a complaint for dissolution of . . . marriage[.] [O]n or about December 15th[,] 2020[,] [Mario] was personally served with the summons in this matter. These facts are uncontested. . . . see [Mario's] Motion to Vacate and the Decree. After more than 60 days passed notice of the default hearing was mailed

- 4 -

by this District Court to [Mario] as statutorily permitted in a manner uniform with those prescribed by the local rules. [Mario] argues two points. One, that the notice was never sent or two, that [Maria] intercepted notice prior to [Mario's] receipt. Point 1 fails barring administrative error from this court. And considering the durth [sic] of evidence to the contrary, [Mario's] second assertion lacks merit to overcome the presumption of receipt.

The following colloquy was then had between the court and Maria's attorney.

THE COURT: How you [sic] think notice of the default hearing was sent to [Mario]?

[Counsel]: I -- the reason I stated that in the brief is because I don't have any record that I sent the notice by mail because we just stuck it in the mail, and my assistant put it in the mail. I put the drop down box on there as well, cause I thought that maybe they [the clerk of the court] sent it as well. I don't know. I just put that on there because on the notice it says - on the notice of hearing it says first class mail so that's why I put it on there.

THE COURT: Well are you of the opinion that the Clerk's office mails these out?

[Counsel]: I thought so, Your Honor. . . . [I]n prior hearings I put that on there and they sent it by first class mail and -- in Douglas County and so I -- and that's what I thought. I'm sorry.

THE COURT: E-filing everywhere, the Clerk's office only sends out Orders.

. . . .

[Counsel]: All I'm saying Your Honor, is I -- I just thought that it was served by the Court as well as -- as our office. I didn't have any evidence of -- of us sending it in the mail, so I thought that, that would be a better of [sic] addressing it in . . . the brief. . . .

THE COURT: Well then you probably should've said that in your brief, instead of ---

. . . .

. . . . I mean cause really it leaves me to question the credibility of those statements now when --

. . . .

. . . . when it's not consistent and doesn't comport with basically the practice of law 101. I mean you have to mail it out. That's statutorily what you have to do.

The court then took that matter under advisement.

In its order entered on July 6, 2021, the district court overruled Mario's motion to vacate and/or set aside, stating, "It is uncontroverted that [Mario] was personally served with the action and either through his own fault, negligence, or want of diligence failed to protect his own interests, to his peril."

Mario appeals.

### ASSIGNMENTS OF ERROR

Mario assigns, reordered, that the district court abused its discretion by denying his motion to vacate and/or set aside the default decree because (1) he never received notice of the default

- 5 -

hearing, and (2) he promptly moved to vacate and/or set aside the decree and presented a meritorious defense. Maria did not file an appellee's brief in response.

## STANDARD OF REVIEW

In reviewing a trial court's action in vacating or refusing to vacate a default judgment, an appellate court will uphold and affirm the trial court's action in the absence of an abuse of discretion. *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

In a civil case, a court has inherent power to vacate or modify its own judgments at any time during the term at which those judgments are pronounced, and such power exists entirely independent of any statute. *Porter v. Porter*, 309 Neb. 167, 959 N.W.2d 235 (2021). The district court for Lancaster County is in the Third Judicial District, and under its local rules, the regular term of the court runs from January 1 through December 31 of each calendar year. See Rules of Dist. Ct. of Third Jud. Dist. 3-1 (rev. 1999). Mario's April 28, 2021, motion to vacate and/or set aside was filed within the same term as the district court's April 1 default decree, therefore, the district court had the inherent authority to vacate or modify the decree.

### NOTICE OF DEFAULT HEARING

Mario contends that the district court abused its discretion by denying his motion to vacate and/or set aside the default decree because he never received notice of the default hearing.

Maria filed a "[p]etition" for dissolution of marriage on November 18, 2020. Mario was personally served with summons and a copy of the petition on December 15, and he did not subsequently file a responsive pleading. Accordingly, Mario was in default. See, Neb. Ct. R. Pldg. § 6-1112(a)(1) (defendant shall serve an answer within 30 days after being served with the summons and complaint). However, no suit for divorce shall be heard or tried until 60 days after perfection of service of process, at which time the suit may be heard or tried and a decree may be entered. Neb. Rev. Stat. § 42-363 (Reissue 2016).

Immediately after that 60-day waiting period, on February 16, 2021, Maria filed a "Motion for Default Hearing" and a "Notice of Hearing." Rules of Dist. Ct. of Third Jud. Dist. 3-4 (rev. 1995) states that a notice of a hearing for judgment or decree on default shall be given as provided for in Rules of Dist. Ct. of Third Jud. Dist. 3-2. Rule 3-2 (rev. 1999) provides in relevant part:

> A. When any motion requiring a hearing is filed, it shall be filed with a notice of hearing with a date, time, manner of hearing, and certificate of service with the Clerk of the District Court (Clerk) not less than 5 days prior to hearing, except by permission of the court.
>
> . . . .
>
> C. Notice of said hearing shall be mailed or personally delivered to opposing counsel or party, if not represented by counsel, three full days prior to said hearing. The

use of ordinary mail shall constitute sufficient compliance with this Rule, except as may be otherwise specifically required by statute or rule of the Supreme Court.

The "Certificate of Service" for both the "Motion for Default Hearing" and "Notice of Hearing" state that a copy of the respective document was served on Mario by "First Class Mail." Thus, on the face of the documents, it appears that Maria complied with Rule 3-2.

However, as noted previously, at the hearing on Mario's motion to vacate and/or set aside, there was some confusion as to whether Maria's counsel did in fact mail the notice of hearing to Mario, or whether counsel believed that the clerk of the district court would mail the notice to Mario. Regardless, even if the notice of hearing was mailed to Mario, he claims he never received the notice, stating that he continued to cohabitate with Maria and she was the one who "most often got our mail," and further stating that Maria "never said anything to me about the default hearing until after the hearing was over." (Emphasis omitted.)

The district court appeared concerned about whether Maria mailed notice of the default hearing to Mario. However, in its July 6, 2021, order overruling Mario's motion to vacate and/or set aside, the court did not specifically address whether Maria had properly sent notice of the default hearing to Mario in compliance with the court's local rules. Rather, the court stated that Mario had been personally served with the divorce action and "either through his own fault, negligence, or want of diligence has failed to protect his own interests, to his peril."

There are certainly concerns about whether Mario received notice of the default hearing. However, even assuming he received notice, he promptly filed a motion to vacate and/or set aside the default decree and presented a meritorious defense, as discussed next.

MERITORIOUS DEFENSE

Mario contends the district court abused its discretion by denying his motion to vacate and/or set aside the default decree because he promptly filed his motion and presented a meritorious defense.

When determining whether to set aside a default judgment, two competing interests must be considered: the right of a litigant to defend the action on the merits and judicial efficiency. *Applied Underwriters v. Oceanside Laundry*, 300 Neb. 333, 912 N.W.2d 912 (2018). The law favors allowing a defendant to present a defense to the court. *Carrel v. Serco Inc.*, 291 Neb. 61, 864 N.W.2d 236 (2015). Where a judgment has been entered by default and a prompt application has been made at the same term to set it aside, with the tender of an answer or other proof disclosing a meritorious defense, the court should on reasonable terms sustain the motion and permit the cause to be heard on the merits. *Underwriters v. Oceanside Laundry, supra.*

In its order overruling Mario's motion to vacate and/or set aside the default decree, the district court did not consider whether Mario had a meritorious defense. Accordingly, we will address the merits of Mario's motion to determine whether the district court abused its discretion in overruling the motion.

Mario filed his motion to vacate and/or set aside 27 days after the default decree was entered, and within the same term of court. The promptness of his filing weighs in his favor. See, *Applied Underwriters v. Oceanside Laundry,* 300 Neb. at 342-43, 912 N.W.2d at 920 (finding abuse of discretion and reversing district court's order overruling motion to set aside that had been

- 7 -

promptly filed within 18 days of default judgment and meritorious defense had been tendered; "allowing the default judgment to stand would unfairly deprive [defendant] of a substantial right and produce an unjust result"); *Moackler v. Finley*, 207 Neb. 353, 299 N.W.2d 166 (1980) (affirming district court's order sustaining motion to set aside and vacate filed more than 4 months after default judgment). See, also, *Porter v. Porter, supra* (in civil case, court has inherent power to vacate or modify its own judgments at any time during term at which those judgments are pronounced); Rule 3-1 (regular term of court runs January 1 through December 31 each calendar year). Mario also points out that "divorce decrees do not become final for a period of 30 days after entry of such decree." Brief for appellant at 11. As such, he argues that he filed his motion to vacate and/or set aside before the default decree "was even final." *Id*. at 12. See Neb. Rev. Stat. § 42-372.01 (Reissue 2016) ("a decree dissolving a marriage becomes final and operative thirty days after the decree is entered").

There is no question that Mario promptly filed his motion to vacate and/or set aside the default decree. Therefore, the remaining issue is whether he tendered proof disclosing a meritorious defense. In the context of a motion to vacate a default judgment, a meritorious or substantial defense or cause means one which is worthy of judicial inquiry because it raises a question of law deserving some investigation and discussion or a real controversy as to the essential facts. *Underwriters v. Oceanside Laundry, supra.* Although a defendant seeking to vacate a default judgment is required to present a meritorious defense, it is not required that the defendant show he will ultimately prevail in the action, but only that the defendant show that he has a defense which is recognized by the law and is not frivolous. *Id*. Such meritorious defense need not be tendered exclusively as a proposed answer, but may also be in the form of other proof. See *id.*

Initially we note that in his motion to vacate and/or set aside the default decree, Mario presented a meritorious defense when he stated that giving Maria "sole discretion" over Mario's parenting time was contrary to law. See, *VanSkiver v. VanSkiver*, 303 Neb. 664, 930 N.W.2d 569 (2019) (trial court has nondelegable duty to determine questions of custody and parenting time); *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014) (district court's order granting custodial parent discretion to withhold overnight visitation with noncustodial parent if noncustodial parent cohabited with someone of opposite sex was unlawful delegation of trial court's duty). However, since the parties' twin daughters turned 19 years old during the pendency of this appeal, the parenting time issue is now moot.

Mario also made claims regarding the default decree's "grossly inequitable" property distribution. At the hearing on Mario's motion to vacate and/or set aside the default decree, Mario provided his affidavit, along with his mother's affidavit, stating that the Prestwick Road property was his parents' home and was purchased by them without any financial contribution by Mario; Mario's mother also stated that Maria knew the home belonged to Mario's parents and not to Mario. If true, no part of the Prestwick Road property would have been marital property to be included in Mario's and Maria's marital estate, and this would have significantly affected the overall property distribution. See *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021) (equitable division of property in dissolution action is three-step process and includes classifying property as marital or nonmarital; as general rule, spouse should be awarded one-third to one-half of marital estate, polestar being fairness and reasonableness as determined by facts of each case). The

affidavits offered by Mario showed at least a meritorious claim that justified the vacation of the default decree.

We are mindful that while it is the "duty of the courts to prevent an abuse of process, unnecessary delays, and dilatory and frivolous proceedings in the administration of justice," the "[m]ere mistake or miscalculation of a party or his attorneys is not sufficient, in itself, to warrant the refusal to set aside a default judgment, when there is a good defense pleaded," and it would not be unjust to permit a trial on the merits. *Miller v. Steichen*, 268 Neb. 328, 335, 682 N.W.2d 702, 707 (2004). There is nothing in the record before us to indicate that Mario engaged in an abuse of the process, unnecessary delays, or dilatory or frivolous conduct. He claimed he never received notice of the default hearing, and he promptly filed a motion to vacate and/or set aside the default judgment upon hearing about it from Maria. He also made a showing of having a meritorious defense. Accordingly, when considering the competing interests of Mario's right to defend the action on the merits against the desire for judicial efficiency, we conclude it was an abuse of discretion for the district court to overrule Mario's motion to vacate and/or set aside the default judgment.

Further, on remand, Mario should be given a reasonable time to file a responsive pleading to Maria's amended "petition" so that the case may proceed to be decided on the merits. See, *Applied Underwriters v. Oceanside Laundry, supra* (order overruling motion to vacate default judgment reversed and remanded with directions to vacate default judgment and provide defendant reasonable time to file appropriate responsive pleading); *Pittman v. Pittman*, 148 Neb. 864, 29 N.W.2d 790 (1947) (order overruling motion to vacate divorce decree reversed and remanded with directions to vacate decree and allow defendant opportunity to answer to allow case to be decided on merits). Although we conclude that Mario made a showing sufficient to warrant vacating and/or setting aside the default decree to resolve the parties' dispute on the merits, we express no opinion as to whether he will ultimately prevail.

CONCLUSION

For the foregoing reasons, we conclude the district court erred in overruling Mario's motion to vacate and/or set aside the default decree, and we reverse, and remand with directions to the district court to (1) vacate the default decree entered on April 1, 2021, and (2) give Mario a reasonable time in which to file an appropriate responsive pleading.

REVERSED AND REMANDED WITH DIRECTIONS.