IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HANER V. HANER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CASEY C. HANER, APPELLEE,

V.

TRENT W. HANER, SR., APPELLANT.

Filed March 12, 2024.    No. A-23-382.

Appeal from the District Court for Johnson County: RICKY A. SCHREINER, Judge. Affirmed.

Terrance A. Poppe and Gina M. Elliott, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellant.

Diane L. Merwin, of Fankhauser, Nelsen, Werts, Ziskey & Merwin, P.C., L.L.O., for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Trent W. Haner, Sr., appeals from the decree entered by the district court for Johnson County, dissolving his marriage to Casey C. Haner. Trent contends that the district court erred in determining the amount of his child support obligation and in allowing Casey to claim all of the minor children as dependents on her most recent tax return. Finding no abuse of discretion, we affirm.

## STATEMENT OF FACTS

Trent and Casey were married in December 2001, and together have eight children; six of whom were minors during the pendency of this case.

- 1 -

On March 9, 2022, Casey filed a complaint for dissolution of marriage. The complaint alleged that the parties had developed a parenting plan and requested that Casey be awarded legal and physical custody of the minor children. The complaint also requested an award of child support and an equitable division of tax deductions, credits, and exemptions regarding the minor children. Casey filed a motion for temporary orders the same day.

A hearing was held on the motion for temporary orders on April 4, 2022, for which Trent did not appear. In an order entered the same day, the district court awarded Casey temporary custody. The order also set Trent's monthly child support obligation for the six minor children at $3,544, to commence on May 1. Attached to the court's order is a basic child support calculation worksheet which lists Casey's gross monthly income as $2,816.67 and Trent's as $15,166.67.

On July 22, 2022, Trent filed an answer and "cross complaint" for dissolution of marriage which sought temporary and permanent custody of the minor children. Casey filed an answer to Trent's "cross complaint," requesting that the district court dismiss it in its entirety.

*Trial.*

Trial on the matter was held on March 30, 2023, and the parties jointly offered a stipulated parenting plan and property division agreement. Trent's child support obligation and Casey's claiming of all minor children on her 2022 tax return were the sole remaining issues at trial.

During the parties' marriage, Trent had been the primary income earner and Casey had managed the household bills and the parties' joint bank account. Trent did not file annual tax returns during the entirety of the parties' marriage, though Casey stated that she made an effort to get Trent to do so. Trent testified that he did not file any tax returns during the parties' marriage because Casey was responsible for the household finances and implied that he only gained access to his receipts and pay stubs in 2022 when he filed his 2021 tax return. Trent conceded on cross-examination that he stated in a deposition that he had to go through his employer's accounting department, rather than Casey, to collect the information necessary for him to file his tax returns.

Casey testified that she had been a stay-at-home mother until 2017 when she began working in order to provide health insurance for the children. Casey has remained the primary caregiver for all six of the minor children since their birth.

When Casey went back to work in 2017, she began filing her own tax returns under the "married filing separately" tax status and each year has claimed all of the minor children as dependents on her tax returns. Casey's tax documents from 2020, 2021, and 2022, were entered into evidence and reflect annual gross earnings of approximately $27,000.

Casey's 2022 tax return reflects that she claimed the six minor children as dependents and that she received a $9,062 federal refund. Casey had not yet received a state refund at the time of trial. Casey testified that she claimed the six minor children as dependents because she was not aware that Trent was planning to file a 2022 return given that he had not filed returns since 1998. Trent testified that he was planning to file a 2022 tax return and that he had been unaware until trial that Casey had claimed all six of the minor children on her own return. Trent requested to claim all six of the minor children on his prospective 2023 tax return and thereafter divide the dependency exemptions equally with Casey as a way to "remedy the situation[.]"

Casey has been employed as a fulltime home health aide since August 2022, earning $19 an hour plus $28.50 for any overtime. Four of Casey's biweekly paystubs from 2023 were entered into evidence and reflect an average gross pay of $1,667. Employee benefit information entered into evidence demonstrates that Casey was carrying all eight of the parties' children on her employee health insurance plan for approximately $500 a month.

Trent has been self-employed as a commercial truck driver since 1994. Though Trent has an annual contract through a moving and storage company, his earnings are variable and dependent on the volume of work available to him. His contract does not guarantee a minimum amount of driving in a given week. As a requirement of his contract, Trent owns the Freightliner truck he drives; a 2007 truck with over 770,000 miles on it. Trent also noted that drive-related expenses, such as fuel, truck repairs, insurance, and office fees, are deducted from his gross pay and reflected in his pay stubs. At times Trent also expenses regular truck maintenance through his personal bank account.

During the discovery phase of the case, Casey requested Trent's income information. He produced eight weekly pay stubs from 2022 and a 2021 tax return. The tax return reflected Trent's annual income as $82,820. Trent testified that his 2021 tax return was the best reflection of his income and that in the last 5 years, $0 was the lowest amount he earned in a week and $10,800 was the most. Casey did not believe that the tax return was a complete reflection of Trent's income, recalling that in 2021 Trent was earning between $10,000 and $15,000 a month.

Casey agreed that Trent's 2022 paystubs, which reflect an average weekly gross income of $3,637, were more accurate. Trent's variable weekly gross earnings reflected in his 2022 paystubs range from $2,721.68 to $5,228. The 2022 paystubs additionally reflect an average of $1,458.80 deducted from each week's gross pay as "[l]ess expenses[.]" Casey also offered 26 of Trent's weekly paystubs from 2018, which reflect an average gross income of approximately $2,125. On cross-examination, Casey conceded that during their marriage Trent's weekly pay could have been as little as roughly $550.

In January of 2023, Casey received a Form 1099-NEC from Trent reflecting that she had earned nonemployee compensation from him. A copy of the 1099-NEC was entered into evidence and reflects that Casey earned $21,000 from Trent, which Casey testified was approximately the amount of Trent's 2022 child support obligation. Casey testified that prior to the parties' separation, Trent told her during a conversation involving income and child support, that if she left the relationship he would stop paying for the children's sports and would "go work at McDonald's."

Both parties offered their own child support calculation worksheets based on various imputed incomes. One of Casey's worksheets, exhibit 12, was identical to the worksheet attached to the district court's temporary order; listing Casey's monthly gross income as $2,816.67 and Trent's as $15,166.67 and setting Trent's monthly child support obligation as $3,544.

*Decree.*

The district court entered a decree of dissolution on April 21, 2023. The court adopted the parties' stipulated parenting plan and ordered Trent to pay a monthly child support obligation of $3,544 for the six minor children. The court found that commencing with the 2023 tax year, the parties shall split claiming the children equally for tax purposes, both as a qualified dependent as

well as for any eligible credits or deductions available until the child is no longer eligible as such. The court further found that it was "appropriate" for Casey to have claimed the six minor children on her 2022 tax return and that Trent was not entitled to any of Casey's refund or to claim additional children in future years.

On June 16, 2023, the district court entered an order nunc pro tunc, correcting the omission of the child support worksheet relied upon by the court in its orders. The order stated that exhibit 12 was received at trial and adopted by the court as the child support amount ordered in the decree and should have been attached to the decree on the date it was entered.

Trent appeals.

ASSIGNMENTS OF ERROR

Trent assigns that the district court erred in (1) relying on Casey's child support calculation and (2) allowing Casey to claim all six minor children as dependents on her 2022 tax return.

STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021). In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*.

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

ANALYSIS

*Trent's Child Support Obligation.*

Trent argues that the district court erred in relying on exhibit 12, Casey's child support calculation, and failed to appropriately consider all the evidence presented at trial, specifically, his 2021 tax return. Trent contends that because his gross monthly income was incorrectly imputed, his child support obligation is unreasonably high.

The primary concern in determining child support is the best interests of the child. See *Roberts v. Roberts*, 25 Neb. App. 192, 903 N.W.2d 267 (2017). The main principle behind the Nebraska Child Support Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective incomes. *Id*. In general, child support payments should be set according to the Nebraska Child Support Guidelines, which compute the presumptive share of each parent's child support obligation. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). In computing each parties' obligation a court is to consider the total monthly income of both parties. See Neb. Ct. R. § 4-204.

The Nebraska Child Support Guidelines provide "[c]opies of at least 2 years' tax returns, financial statements, and current wage stubs should be furnished to the court and the other party

to the action at least 3 days before any hearing requesting relief." Neb. Ct. R. § 4-204; see also Neb. Ct. R. Worksheet 1 (providing that a "[c]ourt will require copies of last 2 years' tax returns to verify 'total income' figures and copies of present wage stubs to verify the pattern of present wage earnings). However, this rule is not strictly construed. See *Gangwish v. Gangwish, supra* (finding that Nebraska Supreme Court has favored flexible approach to determining parent's income for child support proceedings because such actions are, despite guidelines, equitable in nature).

At trial, Casey testified that during the discovery process Trent produced only two items to evidence his income: his 2021 tax return, demonstrating an annual gross income of $82,820, and eight weekly paystubs from 2022, demonstrating an average weekly gross income of $3,637. The 2021 tax return indicates that Trent's approximate gross monthly income was $6,901.67 (82,820 ÷ 12) and the 2022 pay stubs reflect $15,760.33 gross monthly income (3,637 × 52 = 189,124 then 189,124 ÷ 12). During the parties' marriage, Casey managed all household finances from the parties' joint bank account and testified at trial that she found the 2022 pay stubs to be more representative of Trent's gross income. Trent was unable to produce additional tax returns because he did not file returns during the entirety of the parties' marriage.

The district court adopted Casey's offered child support calculation as the basis for the decree's child support order, thereby implicitly finding her position more credible. Given the limited evidence of Trent's income offered at trial, we give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021).

We find no abuse of discretion by the district court in adopting Casey's child support calculation. This assignment of error fails.

*Casey's 2022 Tax Return.*

Trent also argues that the district court erred in allowing Casey to claim all six minor children on her 2022 tax return. The decree ordered the parties to split claiming the children equally as dependents on future tax returns but did not order Casey to reimburse Trent for claiming the minor children in 2022. Trent asserts, "[t]his decision was made in error, as the parties were working off a joint child support calculation." Brief for appellant at 11.

Casey testified that since returning to work in 2017, she has filed annual tax returns under the married filing separately status and each year has claimed all minor children as dependents. Trent has not filed taxes for decades but did file a 2021 tax return, which was produced for Casey during the discovery process. Casey testified that she was unaware that Trent was planning to file taxes for 2022. All of the minor children resided with Casey who had been their primary caregiver since birth and was awarded custody.

In general, the custodial parent is presumptively entitled to the federal tax exemption for a dependent child. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). Casey had temporary physical and legal custody of the minor children during the majority of the 2022 tax year. Contrary to Trent's assertion, the temporary child support calculation was not a "joint" calculation; rather, the worksheet utilized was the basic income and support calculation. Given the circumstances and equities of this case, we cannot say that the district court abused its discretion in finding it was appropriate for Casey to have claimed the six minor children on her 2022 tax

- 5 -

return and not order reimbursement to Trent. See *Kauk v. Kauk, supra* (holding judicial abuse of discretion exists if reasons or rulings of trial judge are clearly untenable, unfairly depriving litigant of substantial right and denying just results in matters submitted for disposition). This assignment of error fails.

CONCLUSION

The district court did not abuse its discretion in relying on exhibit 12 in its child support determination or in finding Casey's claiming all minor children on her 2022 tax return to be appropriate.

AFFIRMED.