Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/24/2021 12:08 AM CST

Linda A. Eis, appellee, v.
Donald W. Eis, appellant.

___ N.W.2d ___

Filed October 1, 2021.    No. S-20-515.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Divorce: Property Division.** Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse.

5. **Property Division.** If separate property remains segregated or is traceable into its product, commingling does not occur.

6. **Property Division: Proof.** The party claiming that property is nonmarital has the burden of proving the property's separate status.

7. **Agriculture: Crops: Equity.** Courts are allowed flexibility in their treatment of stored and growing agricultural crops to account for the equities of the situation.

8. **Divorce: Property Division: Equity.** Courts are not required to use only one valuation date in equitably dividing a marital estate.

9. **Divorce: Property Division: Appeal and Error.** The date upon which a marital estate is valued should be rationally related to the property composing the marital estate. The date of valuation is reviewed for an abuse of the trial court's discretion.

10. **Property Division: Appeal and Error.** A single valuation date may not always be appropriate. What may be a fair and reasonable valuation on one date for an asset may be unfair and unreasonable for another asset on the same date.

Appeal from the District Court for Richardson County: Julie D. Smith, Judge. Affirmed.

Jeffrey A. Gaertig and Gregory D. Kratz, of Smith, Schafer, Davis & Gaertig, L.L.C., for appellant.

Steven J. Mercure, of Nestor & Mercure, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.
A decree dissolving the marriage of Donald W. Eis and Linda A. Eis was entered in March 2020. That decree also divided the parties' personal and real marital property, awarding "Tract No. 2" (Tract 2) to Linda as her sole and separate property, awarding "Tract No. 1" (Tract 1) to Donald as his sole and separate property, and ordering Donald to make an equalization payment to Linda of $165,062.50 to account for the remaining discrepancy in value of the property awarded to each party.

In response to this decree, Linda filed a motion to alter or amend the judgment to account for grain in storage at the time of trial that was not accounted for in the original decree. The district court granted Linda's motion and modified the decree, awarding Linda an increased equalization payment of $176,462.50. Donald filed a motion for new trial, which the district court denied in June 2020. Donald appeals. We affirm.

## I. BACKGROUND

Donald and Linda married in November 1984, the second marriage for both. They had no children together and remained married for 33 years before separating in March 2018.

Prior to his marriage to Linda, Donald acquired Tract 1 with his first wife. Tract 1 consists of approximately 120 acres. Upon his marriage to Linda, Donald owned Tract 1 subject to two mortgages in the amount of $68,200 and $5,000. These mortgages were later consolidated in favor of a bank loan under which Donald and Linda were both obligated. The bank loan was satisfied during their marriage using funds from the "farm account." During the course of their marriage, Donald and Linda also acquired Tract 2 from Donald's siblings. Tract 2 consists of approximately 74 acres.

Linda asked the district court to order a sale of both tracts of land. Donald, conversely, asked that the court grant him Tract 1 and grant Linda Tract 2. Donald argues that neither Tract 1 nor the farm account which he uses to finance Tract 1 is marital property and that awarding his one-half interest in Tract 2 to Linda in lieu of an equalization payment would therefore satisfy any value due to Linda for her share of the marital estate.

At trial, Linda presented evidence that in 2007 and 2008, she spent approximately $60,000 of nonmarital funds to renovate the marital home situated on Tract 1. Linda also presented evidence that she and Donald had continually borrowed against Tract 1 throughout the marriage and that the associated liens were satisfied by the wages of both parties. Donald testified that the proceeds from farming both tracts were placed into the farm account to pay for continuing and future farming expenses, including payment of the original mortgage on the property. No evidence was presented regarding the valuation of the tract without the home or the improvements made by Linda during the marriage. After reviewing the evidence, the district court found that both Tract 1 and the funds within the farm account had been commingled and inextricably mixed

with marital property, and thus included both in the marital estate.

As noted above, the decree of the district court dissolved the marriage of the parties and divided their real and personal property. Although both tracts were deemed marital property, Linda was awarded the smaller Tract 2 as her sole and separate property and Donald was awarded the larger Tract 1 as his sole and separate property. An equalization payment of $165,062.50 was awarded to Linda to account for the discrepancy in value of property awarded to each party. The district court required the parties to sign quitclaim deeds facilitating the transfer of each tract in accordance with the terms of its decree, but did not specifically order that either piece of property must be sold.

Linda later filed a motion to alter or amend the judgment or for a new trial, asking the district court to alter its decree to account for the grain in storage at the time of trial. The district court found that the grain in storage at trial was marital property, that it had not been properly included in the decree, and that Linda's marital share was valued at $11,400. The district court entered a modified decree in May 2020, awarding Linda an increased equalization payment of $176,462.50. Donald filed a motion for new trial, which the district court denied in June 2020. Donald appealed, and we moved this appeal to our docket.

## II. ASSIGNMENTS OF ERROR

Donald assigns that the district court erred in (1) classifying nonmarital property as marital property, (2) failing to divide the marital estate equitably and ordering Donald to make an equalization payment to Linda, and (3) partially granting Linda's motion to alter or amend the judgment and increasing the equalization payment.

## III. STANDARD OF REVIEW

[1-3] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether

there has been an abuse of discretion by the trial judge.[1] This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[2] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[3] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[4]

## IV. ANALYSIS

### 1. Classification

In his first assignment of error, Donald asserts that the district court erred by classifying Tract 1 as marital property rather than nonmarital property. Donald argues that Tract 1 was nonmarital property which he acquired prior to his marriage to Linda, toward which he made $34,000 in premarital contributions, and that it did not transform into a marital asset during his marriage to Linda, because it was not commingled or inextricably mixed with marital property. Donald argues that Linda's contributions to Tract 1 were specifically limited to the $60,000 home renovation and garage construction, which is traceable and can be carved out for equalization purposes, and that Linda did not contribute to Tract 1 outside of this specific renovation. Linda contends that Tract 1 was marital property. She specifically contends that the nonmarital funds she expended during the renovation contributed to the appreciation in value of the entire tract, that funds from Tract 2 contributed to the original mortgage against Tract 1, and that

---

[1] *Tierney v. Tierney*, 309 Neb. 310, 959 N.W.2d 556 (2021).

[2] *Id*.

[3] *Id*.

[4] *Id*.

the continued borrowing against Tract 1 was paid in part by wages she earned during the marriage.

[4-6] In *Brozek v. Brozek*,[5] this court held that separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. If the separate property remains segregated or is traceable into its product, commingling does not occur.[6] The burden of proof rests with the party claiming that property is nonmarital.[7] As the party claiming Tract 1 is nonmarital property, Donald carries this burden of proof.

We turn to the issue of Tract 1's appreciation in value during Donald and Linda's marriage. Donald asserts that Linda's contributions to Tract 1 were limited to the remodel of the home and garage and that Linda did not care for or farm the tract; thus, her share of any appreciated value should be limited to the home and not the entire 120 acres upon which the home is situated.

At trial, Linda presented an appraisal as evidence of the value of Tract 1. The appraisal found that Tract 1, including the marital home and detached garage, was worth approximately $575,000. Despite his burden of proof, Donald presented no evidence regarding the value of Tract 1 as separate from the marital home or garage and was unable to prove that the appreciation in value ($88,200 in 1979 versus $575,000 in 2020) was not linked to Linda's renovations.

We turn next to the issue of shared mortgage obligations and continued borrowing against Tract 1. When Donald married Linda, Tract 1 was subject to two mortgages in the amounts of $68,200 and $5,000. During Donald and Linda's marriage, these liens were discharged when Donald and Linda paid off the original "FHA" loans in favor of a new consolidated bank loan. Donald and Linda were both jointly and severally liable

---

[5] *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

[6] *Id.*

[7] *Id.*

on the new promissory note in the amount of $40,742.19, and the deed of trust for this transaction named both Donald and Linda.

Linda testified that most of the loan amounts, which the parties used to purchase the farm, were paid off using marital funds during her 33-year marriage to Donald. Donald claimed that the yearly mortgage payments for both the original FHA loans and the consolidated bank loan were paid directly from the farm account to which Linda had never contributed. However, Donald also admitted that income from *both* Tract 1 and Tract 2 went into the farm account and were commingled since at least 2006, thus indicating that Linda's marital income from Tract 2 may have contributed to the mortgage payments when Donald paid from this account.

Donald and Linda also continually borrowed against Tract 1 throughout their marriage: $4,250 in 1985, $15,500 in 1990, and $10,850 in 1995. Both parties testified that these mortgages, each made in favor of Lincoln Telephone Employees Credit Union, were paid either directly with wages of both parties while they were employed by Lincoln Telephone Company or from the "town account," where their assets were commingled.

Having reviewed the record de novo, we hold that the district court's decision to classify Tract 1 as marital property was not an abuse of discretion. Donald offered no evidence that Linda's contribution of nonmarital funds to the home renovation did not contribute to the appreciation in value of the tract or that the appreciated value derived from the renovation was traceable to Linda. Donald also failed to offer evidence that marital income from Tract 2, deposited into the farm account, was traceable to either party. And Donald did not offer evidence showing that the payments made toward the FHA loan, toward the consolidated bank loan, or in favor of Lincoln Telephone Employees Credit Union were traceable to either party. Accordingly, Donald's first assignment of error is without merit.

## 2. Division

In his second assignment of error, Donald asserts that the district court erred by failing to divide the marital estate equitably and ordering him to make an equalization payment to Linda. Donald argues that the district court should have adopted his proposal on the division of land wherein Donald would deed his share of Tract 2, worth $157,500, to Linda in lieu of an equalization payment. However, Donald's proposal for such division was entirely dependent on a finding that Tract 1 was not marital property. Thus, where Tract 1 was properly classified as marital property, there is no merit to Donald's second assignment of error.

## 3. Increased Equalization Payment

In his third assignment of error, Donald contends that the district court erred in partially granting Linda's motion to alter or amend the judgment and increasing the equalization payment in the amount of $11,400.

In Linda's motion to alter or amend the judgment, she argued that the district court failed to allocate or award the grain harvested from the marital estate for the 2017, 2018, and 2019 crop years, including grain held in storage for the 2019 crop year. After a hearing on the motion, the district court found that the parties had separated in 2018 and that there had been no testimony regarding grain in storage as of their separation; thus, no value was owed to Linda for the 2017 or 2018 crop years. However, there had been testimony regarding grain in storage for 2019, and such grain would have been generated in part by the ownership of the marital land and in part by Donald's efforts after the date of separation. Because the grain held in storage in 2019 did not yet exist as of the date of separation of the parties, the district court instead used the date of trial to give value to the grain.

The district court then calculated the value and shares of grain as follows: (1) the 2019 grain held in storage had a value of $28,500; (2) 60 percent of this value should be

allocated to Donald for his efforts postseparation ($17,100); (3) 40 percent of this value should be allocated to the marital estate due to joint ownership of the land that generated the grain ($11,400); and (4) where Donald had already sold half of the grain in storage, the remainder was solely attributable to Linda's share of marital property. Based on these calculations, the district court amended the prior decree and increased the equalization payment due to Linda in the amount of $11,400 to account for her share of the 2019 grain.

On appeal, Donald's argument that the district court erred is twofold: that Linda should not be entitled to grain proceeds after she filed for divorce and that the district court should have used the date of separation rather than the date of trial as the valuation date for the grain awarded. We disagree on both counts.

### (a) Grain Proceeds

We will first address Donald's argument regarding Linda's entitlement to grain proceeds. There are two issues we must consider in this regard: (1) whether the grain proceeds resulted from marital property and (2) whether Linda is entitled to a portion of the grain proceeds postseparation.

The district court, in awarding Linda a portion of the grain proceeds, stated that the grain was "generated in part by the ownership of the marital land," but did not specify whether it was referring to Tract 1, Tract 2, or both tracts combined. It is possible that the grain in storage at the time of trial came entirely from Tract 1 or from Tract 2, or in part from both. A finding by this court that Tract 1 is nonmarital property would thus impact Linda's ability to receive a share of proceeds if the grain were entirely derived from that nonmarital property.

Donald, as the party asserting that this grain is nonmarital property and that Linda is not entitled to a share of proceeds derived therefrom, carries the burden of proof. Yet he provided no evidence and no testimony at trial indicating the origin of the grain in storage. On the other hand, Donald did testify

that there were approximately 74 acres of tillable land on Tract 2. Thus, even if this court were to find that Tract 1 is nonmarital property, there is not enough evidence in the record to show that the grain in storage is nonmarital or that it derived entirely from Tract 1 rather than entirely from Tract 2 or from a combination of both tracts. Accordingly, whether Tract 1 is marital or nonmarital property, Linda will still be entitled to a share of the grain as part of the marital estate.

We now turn to the issue of Linda's ability to receive a share of proceeds postseparation. Donald argues that he and Linda separated their finances in March 2018 and that since that time, Linda had not "paid for anything on the farm" and never offered to share in the farming expenses or debts. Donald presented tax returns showing a net loss of between $15,000 and $30,000 each year beginning in 2015, and he argued that Linda should not be entitled to grain proceeds on the farm after they separated their working finances, because she was no longer associated with these losses or other burdens of the farm.

[7] While it is true that a discrepancy exists between the parties regarding their contributions toward the farm, the district court had already accounted for this discrepancy in its order. We allow courts flexibility in their treatment of stored and growing agricultural crops to account for the equities of the situation.[8] The district court, in accounting for the equities between Donald and Linda, assigned a 60-40 split to the grain. It awarded 60 percent solely to Donald as nonmarital property based on evidence that Donald alone contributed to the farming operations postseparation and that Linda was no longer associated with the burdens of the farm. The district court then awarded the remaining 40 percent to the marital estate based on evidence that the crops were grown and harvested as a result of joint marital ownership of the two tracts. The fact that Linda was not contributing financially to farming operations

---

[8] *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

after March 2018 does not preclude her from receiving a por-
tion of the 2019 grain, because such interest derives from her
share of ownership in the real property.

Linda's interest in the 2019 grain is distinguishable from
prior cases where we observed that "crops produced before
the marriage and sold during the marriage would generally be
considered marital income, but crops produced during the mar-
riage but sold after would not."[9] In *Osantowski v. Osanowski*,[10]
we analyzed the effects of crop harvesting and storage post-
separation as it related to marital income, where the husband
owned farmland jointly with his brothers but not with his wife.
The husband farmed the land prior to, during, and after his
marriage, and the parties disagreed as to whether crops grown
during the marriage, but harvested and stored for sale post-
separation, should be considered marital income. Their dispute
centered on the rule that "[i]ncome earned from one or both
spouses' employment during a marriage is a marital asset."[11]
The wife sought to classify the stored grain as income in order
to include it in the marital estate, where she otherwise would
have no claim to the grain or its proceeds.

In contrast to *Osantowski*, the grain held in storage by Donald
was harvested from land that was jointly owned by Linda
herself and was already part of the marital estate. The issue
considered by the district court was not one of marital *income*,
or whether income transformed the crop into a marital asset,
but, rather, the determination and possession of marital prop-
erty *upon which the grain was initially grown and harvested*.
Linda's entitlement to the grain does not revolve around the fact
that crops depend upon sale for realization as income, because
the tangible grain itself is already marital property.

---

[9] *Id.* at 356, 904 N.W.2d at 266 (citing *Kalkowski v. Kalkowski*, 258 Neb.
1035, 607 N.W.2d 517 (2000)).

[10] *Osantowski v. Osantowski, supra* note 8.

[11] *Id.* at 356, 904 N.W.2d at 265 (citing *Davidson v. Davidson*, 254 Neb. 656,
578 N.W.2d 848 (1998)).

Our holdings in *Kalkowski v. Kalkowski*[12] are distinguished here for the same reason. *Kalkowski* revolved around a determination of crops as income in order to constitute marital property when one spouse otherwise had no claim to the crops, whereas this case was based on a determination that the real property generating the crop was already a marital asset.[13] Other cases addressing crop storage and marital property determinations are distinguishable on this issue where they relate only to premarital property or crops already in storage at the time of marriage.[14] These cases thus do not preclude Linda from a share of the grain even when it was produced during the marriage but harvested and sold, or stored for future sale, postseparation.

The district court used a flexible approach to split the stored grain between the parties, accounting for the equities of the situation. We find no abuse of discretion.

### (b) Grain Valuation

We next address Donald's argument regarding the valuation of the 2019 grain. Donald argues that the district court should have used the date of separation, rather than the date of trial, as the valuation date for the stored grain. Donald bases his argument on the fact that the financial accounts of both parties (including the farm account, the town account, and Linda's inherited funds) were each valued as of the date of separation, and thus the same date should be used to value the grain in order to avoid "comparing apples and oranges."

[8-10] This court has previously declined to mandate that a trial court must use only one valuation date in equitably dividing a marital estate.[15] The date upon which a marital estate

---

[12] *Kalkowski v. Kalkowski, supra* note 9.

[13] See *id.*

[14] See, *Brozek v. Brozek, supra* note 5; *Chmelka v. Chmelka*, 29 Neb. App. 265, 953 N.W.2d 288 (2020).

[15] *Rohde v. Rohde*, 303 Neb. 85, 94, 927 N.W.2d 37, 45 (2019).

is valued should be rationally related to the property composing the marital estate.[16] The date of valuation is reviewed for an abuse of the trial court's discretion.[17] A single valuation date may not always be appropriate.[18] What may be a fair and reasonable valuation on one date for an asset may be unfair and unreasonable for another asset on the same date.[19]

As noted by the district court, it could not use the date of separation to value this grain, because the grain did not yet exist. Donald and Linda separated in March 2018, but the 2019 grain would not have been planted or harvested until more than a year after their separation. Donald did not provide any evidence of its value at harvest or its value when he sold "[h]alf of it" prior to trial. The district court therefore used the date of trial to value the 2019 grain, because that is the date upon which Donald first testified to the value of the grain and then-current market prices.

We find no abuse of discretion in the district court's decision to award grain proceeds to Linda or in its decision to value the grain based on Donald's testimony at trial. Donald's final assignment of error is without merit.

### V. CONCLUSION

The decision of the district court is affirmed.

Affirmed.

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*