Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/23/2022 08:07 AM CDT

Cynthia A. Parde, appellant, v.
Arlan D. Parde, appellee.
___ N.W.2d ___

Filed August 16, 2022.    No. A-21-497.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Divorce: Property Division.** In a dissolution action, the equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property to the party who brought the property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. And the third step is to calculate and divide the net marital estate equitably between the parties.

5. ____: ____. Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate.

6. ____: ____. The marital estate does not include property that a spouse acquired before the marriage, or by gift or inheritance.

7. ____: ____. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse.

8. \_\_\_\_: \_\_\_\_. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.

9. \_\_\_\_: \_\_\_\_. The original capital or value of an asset may be nonmarital, while all or some portion of the earnings or appreciation of that asset may be marital.

10. **Divorce: Property Division: Proof.** The burden of proof rests with the party claiming that property is nonmarital.

11. **Divorce: Property Division.** The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of the appreciation or income.

12. **Divorce: Property Division: Presumptions: Proof.** Accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse.

13. **Divorce: Property Division: Words and Phrases.** Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property.

14. \_\_\_\_: \_\_\_\_: \_\_\_\_. Passive appreciation is appreciation caused by separate contributions and nonmarital forces.

15. **Divorce: Property Division: Proof.** The burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income.

16. **Divorce: Property Division: Pensions.** Investment earnings accrued during the marriage on the nonmarital portion of a retirement account may be classified as nonmarital where the party seeking the classification proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is due solely to inflation, market forces, or guaranteed rate rather than the direct or indirect effort, contribution, or fund management of either spouse.

17. **Appeal and Error.** An appellate court will not consider an argument or theory that is raised for the first time on appeal. Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

18. \_\_\_\_. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

19. **Divorce: Taxes.** A trial court does not have discretion to compel parties seeking marital dissolution to file a joint income tax return.

20. **Attorney Fees.** Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

21. \_\_\_\_. Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits.

22. **Divorce: Attorney Fees.** In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

Appeal from the District Court for Gage County: RICKY A. SCHREINER, Judge. Affirmed in part, and in part reversed and remanded with directions.

John W. Ballew, Jr., and, of Counsel, Steven D. Burns, of Ballew Hazen, P.C., L.L.O., for appellant.

Terrance A. Poppe and McKynze P. Works, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellee.

MOORE, RIEDMANN, and ARTERBURN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Cynthia A. Parde (Cindy) appeals the decree of dissolution of marriage entered by the district court for Gage County that dissolved her marriage to Arlan D. Parde and divided the marital estate. The primary issue on appeal is the court's classification and division of several parcels of agricultural land. For the reasons set forth below, we affirm in part, and in part reverse and remand with directions.

## II. BACKGROUND

Arlan and Cindy were married in April 1994. It was the second marriage for both of them, and no children were born of this marriage. The parties separated around January 2019

and stipulated that this "date" should be the "valuation date" for their assets and liabilities. At the time of trial, Arlan was 70 years old and Cindy was 63 years old. The couple had been married for 26 years.

Trial was held on February 19, 2021, and the following evidence was adduced: At the time of the marriage, Arlan's premarital debt totaled $393,989. His premarital assets were approximately $715,336, leaving a net worth of approximately $321,347. Shortly after the marriage, Cindy signed a financing statement and security agreement obligating her for all Arlan's loans at the bank. Only one bank account was used throughout the marriage, a marital checking account, and the account included proceeds from the sale of property, cattle, and crops and was used to pay all business and personal expenses. Farming operation expenses paid from the checking account included fertilizers and lime, insurance, mortgage interest, repairs, maintenance, taxes, utilities, seeds, and plants.

Cindy owned a house from her previous marriage. Arlan and Cindy lived in it together for about a year, and Arlan testified that he made mortgage payments on it. That house was sold during the marriage, and the proceeds from the sale, $104,701, were deposited into the marital checking account.

Prior to and throughout the marriage, Arlan maintained a farming operation. Over the course of the 26-year marriage, both Arlan and Cindy contributed to the farming operation and Cindy was not otherwise employed outside the home. She helped with all aspects of the farming operation, including planning, servicing a combine, milking cows, hauling manure, hauling bales of hay, and bookkeeping. Running the farm was a full-time job requiring Arlan to work more than 40 hours a week. Arlan also operated a trucking business from 1998 through 2002; when Arlan was away, Cindy and a hired man handled the chores on the farm.

Arlan and Cindy listed their net worth as approximately $2 million on their January 2019 agricultural balance sheet.

Arlan agreed that the increase in wealth from $400,000 to about $2 million came "from the land, the dairy, the farm operation, the things that not only [he] had before the marriage but the two of [them] worked at during the marriage," and from his trucking business. Arlan did not provide any additional testimony regarding the increased value or appreciation in value of the land or farming operation.

The land at issue on appeal is all located in Gage County, Nebraska, and includes sites herein called Fertilizer Plant, Home Place, Lenard's Farm, Grandma's Farm, Rademacher Farm, and Holmesville Farm. Facts specific to each parcel will be discussed in detail below. At the time of the parties' separation, Home Place and portions of Fertilizer Plant, Holmesville Farm, Lenard's Farm, and Grandma's Farm were still owned by Arlan or jointly by Arlan and Cindy.

The land called Fertilizer Plant currently consists of approximately 100 acres. Arlan purchased 113 acres of land in 1981 for approximately $90,000, and throughout the marriage, it remained titled solely in Arlan's name. The land was paid off in 1991, according to the payment schedule. At the time of the parties' marriage, Fertilizer Plant was worth approximately $70,000, as listed on Arlan's January 1994 agricultural balance sheet. At the time of their separation, it was worth approximately $403,750.

In 2002, Arlan and Cindy built a house on 5 acres of land from Fertilizer Plant, and they called it Home Place. Home Place was appraised at $385,000, but Arlan testified that amount included the 5 acres of land that he owned prior to the marriage, which had a present value of $25,000. Home Place, including the 5 acres, was jointly titled in Arlan's and Cindy's names.

The land called Lenard's Farm initially consisted of 160 acres. Arlan purchased Lenard's Farm in 1991, borrowing $50,000 from his mother for the purchase price. On his 1994 agricultural balance sheet, Arlan listed the property's value at $64,000, and he owed approximately $40,000 plus interest,

according to the loan's payment schedule. Within 2 weeks of the marriage, Arlan presented Cindy with a promissory note for $60,000 and asked her to sign it. The promissory note included $40,000 from the initial Lenard's Farm loan, plus an additional $20,000. The note was paid off during the marriage. Throughout the marriage, portions of the land were sold and the funds were deposited into the marital checking account. At the time of separation, Lenard's Farm consisted of 36 acres and was valued at $153,000.

The land called Grandma's Farm initially consisted of 160 acres. In September 2003, Arlan's mother conveyed the property to Arlan and Cindy as joint tenants in exchange for $80,000. Internal notes from the parties' bank reflect that on September 29, the bank advanced $80,296 for the purchase, and that the land was valued at $136,000, or $850 per acre. The loan was to be paid over the course of 15 years. Arlan testified that after he purchased the land for $80,000, his mother wrote him a check for $20,000 as an inheritance. Arlan claimed that he applied the $20,000 to the purchase price and borrowed the rest from the bank. Arlan's sister testified that she also received $20,000 at that time from their mother. Arlan did not have a copy of the check received from his mother; nor do the bank records reflect a $20,000 payment toward the loan. Grandma's Farm was valued at $236,000 at the time of separation.

Arlan and his first wife purchased Rademacher Farm in 1992 for $65,000. Arlan valued the 100 acres of farmland at $70,000 on his 1994 agricultural balance sheet, and he testified that at the time of his marriage to Cindy, he owed approximately $27,500 on the farm.

In 2002, Arlan and Cindy sold Rademacher Farm for $149,000 and a portion of Lenard's Farm for $32,000 and, in a "1031 exchange," purchased Holmesville Farm for $249,000 with additional bank financing. During the marriage, an irrigation pivot was damaged due to a storm and the equipment

was replaced through insurance funds. Holmesville Farm was valued at $734,000 at the time of separation.

In November 2020, the parties auctioned farm equipment and machinery. The net proceeds of the auction were $381,744.06. At trial, Arlan offered an equipment appraisal for seven machinery items he claimed were premarital. Cindy argued that two of the items that Arlan stated were premarital were still subject to loans at the time of marriage. She stated that one of the items had been purchased 2 weeks prior to their marriage and could not have been paid for, and she alleged that the other item still had $8,000 owed on it. Arlan did not know if the premarital items were subject to debt at the time of marriage. Arlan agreed that some of the "intermediate debt" listed on the 1994 agricultural balance sheet was for machinery. In a posttrial stipulation, the parties agreed that the auction proceeds would be used to pay off three bank loans, leaving remaining auction proceeds of $249,328.77.

At the time of trial, Arlan was retired and no longer physically able to farm. Therefore, on March 1, 2021, following trial but before the district court issued its decree, Arlan signed three crop-share lease agreements for land owned by the parties. He expected to receive approximately $90,000 as a result of the crop-share agreements. The parties had stipulated that Arlan would be awarded the income of crops grown in 2019 and 2020, but they did not have a stipulation regarding the 2021 crops.

After the trial, the district court issued its decree of dissolution of marriage. The court found that at the time of the marriage, Arlan had a net worth between $321,347 and $408,873 and, as relevant to this appeal, owned Home Place/Fertilizer Plant, Lenard's Farm, Rademacher Farm, and farm machinery and equipment. It further found that in 2003, Arlan purchased farm ground from his mother for $80,000 and she gifted $20,000 of the price back to him. The court found that Arlan sold all or parts of the properties listed above and, in respect to all of those properties, placed the proceeds back into the

"farm operation." The court did not agree with Cindy's assertion that Arlan should not receive any credit for owning any of the property prior to the marriage or the gift from his mother. It determined that the following property was nonmarital: all of Fertilizer Plant, Lenard's Farm except for $40,000, 25 percent of Grandma's Farm, and 61 percent of Holmesville Farm.

The district court approved Arlan's division of assets listed in exhibit 83, modifying it to accommodate the parties' posttrial stipulation regarding the machinery auction proceeds. Arlan was awarded as marital property the remaining interest in Holmesville Farm ($286,260), Lenard's Farm ($40,000), Grandma's Farm ($177,000), and Home Place ($286,260). The district court ordered Arlan to make an equalization payment of $398,664.88 to Cindy. The district court did not award alimony or attorney fees.

Cindy filed a posttrial motion to sequester the rents from the 2021 crop-share leases, which motion was denied without prejudice. Cindy filed a motion for new trial and an amended motion to alter or amend judgment, both of which the district court overruled. Cindy timely appealed.

## III. ASSIGNMENTS OF ERROR

Cindy assigns, restated and combined, that the district court erred in (1) classifying, valuing, and dividing the marital estate; (2) failing to recognize proceeds of Cindy's premarital real estate and recognizing a gift of cash without any evidence; (3) allowing Arlan to keep all 2019 crop proceeds as nonmarital property while refusing to award Cindy a compensating judgment for the use of marital moneys toward input costs to produce the crop; (4) allocating an estimated tax liability to Arlan that was inconsistent with the parties' stipulation for trial; (5) failing to award alimony to Cindy in lieu of income-producing property that she had requested at the time of trial; (6) failing to award Cindy a portion of the crop-share lease income attributable to the 2021 leases; and (7) denying Cindy's request for attorney fees and costs.

## IV. STANDARD OF REVIEW

[1-3] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Eis v. Eis*, 310 Neb. 243, 965 N.W.2d 19 (2021). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id.* A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## V. ANALYSIS

[4] In a dissolution action, the equitable division of property is a three-step process. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021). The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property to the party who brought the property to the marriage. *Id*. The second step is to value the marital assets and marital liabilities of the parties. *Id*. And the third step is to calculate and divide the net marital estate equitably between the parties. *Id*.

Cindy asserts that the district court erred in its classification of certain properties as premarital or nonmarital assets. She argues that over the course of their 26-year marriage, some, if not all, premarital property commingled with marital property and lost its nonmarital status. Alternatively, Cindy argues that under the active appreciation rule, the appreciation of nonmarital assets during the marriage is marital property. Many of Cindy's assignments of error relate to the classification of land owned by Arlan prior to marriage as marital or nonmarital. We first discuss the applicable law and then apply the law to each parcel of land.

## 1. Applicable Law Regarding
### Classification of Property

[5-7] Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. *Id*. Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists. *Id*. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Id*. If the separate property remains segregated or is traceable into its product, commingling does not occur. *Id*.

[8-10] Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Kauk v. Kauk, supra*. The original capital or value of an asset may be nonmarital, while all or some portion of the earnings or appreciation of that asset may be marital. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020) (quoting *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017)). The burden of proof rests with the party claiming that property is nonmarital. *Kauk v. Kauk, supra*.

[11-15] The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of an asset's appreciation or income. *White v. White, supra*. Accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse. *Id*. Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property. *Id*. Passive appreciation is appreciation caused by separate contributions and

nonmarital forces. *Id*. The burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income. *Id*. The active appreciation rule applies equally to appreciation or income during the marriage of any nonmarital asset. *Id*.

## 2. PARCELS OF PROPERTY

The case at hand involves properties purchased by Arlan, Arlan and his ex-wife, or Arlan and Cindy. Arlan purchased certain properties prior to the marriage, and either owned the property outright or still owed on the land at the time of marriage. Arlan and Cindy also purchased and sold property during the marriage. Arlan is the party claiming that various properties are nonmarital; therefore, the burden is on him to prove that each claimed nonmarital property remained nonmarital and that any appreciation in the property was not due to marital contributions.

There were no appraisals offered at trial regarding the value of Arlan's property on the date of marriage. On the January 1994 agricultural balance sheet, Arlan identifies the values of the properties owned at that time; therefore, we rely upon those values because of their close proximity to the date of marriage.

### (a) Fertilizer Plant

Arlan originally purchased Fertilizer Plant in 1981 for $90,720, and it was paid off prior to the marriage. Therefore, the value of Fertilizer Plant at the time of the marriage is nonmarital. Fertilizer Plant contained 113 acres in 1981, and through various sales, both before and during the marriage, approximately 100 acres remained at the time of trial.

Based upon the values contained in the 1994 balance sheet, the premarital value of Fertilizer Plant was $70,000. Arlan offered no evidence establishing a different value of Fertilizer Plant at the time of marriage. While Arlan retains the value of his premarital equity in Fertilizer Plant, whether

the appreciation in value of Fertilizer Plant is also nonmarital depends upon whether the appreciation is active or passive. Although the Nebraska Supreme Court has not directly applied the active-or-passive appreciation rule to farmland, an analysis of existing case law leads us to do so.

[16] In *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016), the Supreme Court held that investment earnings accrued during a marriage on the nonmarital portion of a retirement account may be classified as nonmarital where the party seeking the classification proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is due solely to inflation, market forces, or guaranteed rate rather than the direct or indirect effort, contribution, or fund management of either spouse. *Id*.

A year later, the Supreme Court extended the *Stanosheck* rule beyond investment accounts. In *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017), the court was faced with the question of whether an increase in a business interest that was held prior to marriage was nonmarital property. Following an analysis of prior cases addressing the proper classification of appreciated property as marital or nonmarital, the court found there is no reason to treat appreciation of a nonmarital asset differently from income derived from a nonmarital asset. *Id*. It stated that the two-prong test from *Stanosheck* must be proved by the party claiming the growth to be nonmarital and that otherwise, "accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital." *Stephens v. Stephens*, 297 Neb. at 205-06, 899 N.W.2d at 595. It then expounded, "We hold, therefore, that the principles set forth in *Stanosheck* apply equally to appreciation or income during the marriage of *any nonmarital asset*." *Stephens v. Stephens*, 297 Neb. at 205, 899 N.W.2d at 595 (emphasis supplied).

In determining that the principles set forth in *Stanosheck* apply to any nonmarital asset, the *Stephens c*ourt abrogated the principle set forth in *Van Newkirk v. Van Newkirk*, 212

Neb. 730, 325 N.W.2d 832 (1982), *abrogated, Stephens v. Stephens, supra*, which provided that nonmarital property retained its nonmarital status unless the party not owning the property prior to marriage contributed to its improvement. Notably, the majority of the property in question in *Van Newkirk* was a 320-acre farm. *Stephens* likewise found inapplicable future application of the principles set forth in *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986), *abrogated, Stephens v. Stephens, supra*, which allowed consideration of the value of nonmarital assets in determining the equitable amount of the property division. The primary asset in *Grace* was the husband's interest in a family farming and ranching corporation.

In the case at hand, using the two-prong requirement of *Stanosheck*, Arlan failed to produce or provide any evidence that explained the appreciation in value of Fertilizer Plant or any other premarital property. Using the purchase price and Arlan's valuation in the 1994 agricultural balance sheet, from 1981 to 1994, the value of Fertilizer Plant fell from $90,720 (purchase price) to $70,000. Even when accounting for a reduction of 7 acres that were sold prior to 1994, the per-acre value of the farmland decreased. In light of the 1994 value compared to what Arlan paid for the land in 1981, it is not readily apparent that the land would increase in value due solely to market conditions.

To overcome the presumption that appreciation of nonmarital assets during marriage is marital, Arlan was required to prove that (1) the growth is readily identifiable and traceable to the nonmarital asset and (2) the growth is not due to the active efforts of either spouse. See *Stephens v. Stephens, supra*. Arlan satisfied the first prong because the growth is readily identifiable to the land purchased and paid for prior to the marriage. But Arlan failed to satisfy the second prong. The record contains no evidence explaining why the value of Fertilizer Plant increased from $70,000 in 1994 to over $400,000 in 2019. Because it was Arlan's burden to overcome the presumption

and he failed to provide any evidence, the appreciation in value from the time of marriage to the time of separation is marital property. Therefore, regarding Fertilizer Plant, $70,000 is Arlan's nonmarital property and the $333,750 of appreciation is marital.

Cindy argues that Arlan's premarital property was commingled with marital property and lost its separate identity. It is true that marital funds were used to pay mortgage interest, insurance, taxes, conservation expense, and repair and maintenance on Fertilizer Plant. Arlan and Cindy both testified that all income was deposited in the marital checking account, which account was used to pay all expenses. It is evident that marital funds were used to maintain premarital property. However, because we can establish the value of Arlan's interest in Fertilizer Plant as of the date of marriage, we find no abuse of discretion in awarding Arlan that amount as his premarital interest. See *Ramsey v. Ramsey*, 29 Neb. App. 688, 958 N.W.2d 447 (2021) (awarding as premarital that portion of equity which party proves existed at time of marriage).

Cindy also testified that she performed considerable work on the farm, but there is no indication on which tract or tracts of land her services were provided. While we find no abuse of discretion in classifying Arlan's equity in the property at the time of the marriage as premarital property, we determine the court abused its discretion in classifying the appreciated value as nonmarital in light of Arlan's failure of proof.

### (b) Home Place

Home Place is the marital home, sitting on 5 acres of land that previously were part of Fertilizer Plant. Home Place was appraised at $385,000, and Arlan testified that Home Place was appraised at $386,000. Arlan argued at trial that because he owned the land prior to marriage, its present value of $25,000 should not be included in the marital estate. The district court awarded Home Place to Arlan, but valued it at $361,000, presumably subtracting the $25,000 value of the

land as premarital and using Arlan's $386,000 valuation. Cindy counters on appeal that the use of marital income to build Home Place and improve the premarital land caused the 5 acres of land to lose its premarital character. We agree.

As real property upon which the marital house was built, the value of the land cannot be separated from the structure. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). Approximately $267,000 of marital funds were used to construct the marital home which now sits upon the 5 acres of land. Therefore, the $25,000 value of the 5 acres of land should have been classified as marital property in addition to the value of the home and the court abused its discretion in failing to do so. See, also, *Eis v. Eis*, 310 Neb. 243, 965 N.W.2d 19 (2021) (affirming classification of entire tract of land brought into marriage as marital property where marital home upon it was renovated with marital funds).

### (c) Lenard's Farm

Arlan and his first wife purchased Lenard's Farm in 1991, and thay financed the purchase with a loan from Arlan's mother for $50,000. In 1994, Arlan valued Lenard's Farm at $64,000 on the 1994 agricultural balance sheet, and approximately $40,000 was still owed on the note. Therefore, at the time of the marriage, Arlan had approximately $24,000 of equity in Lenard's Farm. Less than 2 weeks after the marriage, Arlan presented a promissory note to Cindy for $60,000 for her to sign; the note included $40,000 of the initial debt for Lenard's Farm and an additional $20,000 for the farming operation. The $60,000 loan was paid off with marital income during the course of the marriage.

Arlan is entitled to a setoff for the equity he had in Lenard's Farm at the time of the marriage, $24,000, but absent evidence that the appreciation was the result of market forces, the

remaining value and appreciation of Lenard's Farm are presumed marital property under *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017). The district court abused its discretion in determining that only $40,000 of Lenard's Farm was marital. Arlan's equity at the time of marriage is the only nonmarital portion of the property. Therefore, $24,000 is Arlan's nonmarital property, and the remaining value of $129,000 is marital property.

### (d) Grandma's Farm

Cindy assigns that the district court erred in determining that Grandma's Farm was 25 percent nonmarital due to a gift to Arlan. Arlan and Cindy purchased the property in 2003 for $80,000. Grandma's Place is presumed to be marital property.

As a general rule, all property accumulated and acquired by either party during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Westwood v. Darnell*, 299 Neb. 612, 909 N.W.2d 645 (2018). Such exceptions include property accumulated and acquired through gift or inheritance. *Id*. The burden of proof to show that property is nonmarital remains with the person making the claim. *Id*.

Here, Arlan testified that the purchase price was $80,000, but that he received a $20,000 check as inheritance which he applied to the purchase price and then borrowed the rest from the bank. However, in his written analysis offered as an exhibit, Arlan stated "Arlan's Mother writes a check to Arlan and his three siblings for $20,000.00 each after Arlan purchases the property." The bank notes support this sequence of events, documenting that Arlan and Cindy financed the full $80,296 for the purchase of this property. While we recognize that in *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019), the Supreme Court determined that a party's testimony may be sufficient to establish property is premarital; here, the documentary evidence refutes Arlan's testimony. Even assuming that Arlan received $20,000 from his mother as a gift or

inheritance, the bank records do not support Arlan's contention that the money was applied to the purchase of the property, either prior to its purchase or as a payment on the loan. Arlan failed to meet his burden of proof, and Grandma's Farm, currently valued at $236,000, is marital property. We find the district court abused its discretion in classifying 25 percent of Grandma's Farm as nonmarital property.

### (e) Rademacher Farm

Although not owned at the time of separation, it is necessary to determine Rademacher Farm's marital or nonmarital status for tracing purposes. Rademacher Farm was purchased by Arlan and his ex-wife in 1990 for $65,000. At the time of marriage, Rademacher Farm was valued at approximately $70,000, and $27,500 remained on the loan. At the time of marriage, Arlan's equity in Rademacher Farm was $42,500, and therefore, $42,500 was Arlan's nonmarital portion of Rademacher Farm. Rademacher Farm was sold in 2002 for $148,500.

### (f) Holmesville Farm

Arlan and Cindy purchased Holmesville Farm in 2002 for $249,000. A portion of the purchase price was a "1031 exchange" involving Rademacher Farm and a portion of Lenard's Farm. The remaining $73,000 was financed through a bank.

Arlan's premarital equity in Lenard's Farm is accounted for under the portion of Lenard's Farm he still owns; therefore, he is not entitled to an additional allocation of equity for the portion of Lenard's Farm he sold to finance the purchase of Holmesville Farm. Arlan is entitled to a setoff of the $42,500 in premarital equity he held in Rademacher Farm that in turn is traceable to the purchase of Holmesville Farm.

As discussed above, Holmesville Farm was purchased during the course of the marriage and marital funds were used to pay the loan, insurance, interest, repairs, and maintenance on

the property. The district court determined that Holmesville Farm was 61 percent premarital based upon Arlan's assertion that he used proceeds from the sale of Rademacher Farm and Lenard's Farm, both of which he claimed were premarital property. However, based upon our analysis set forth above regarding these properties, we determine that Holmesville Farm is marital property, except that Arlan is entitled to a $42,500 set-off of nonmarital property value from the sale of Rademacher Farm. Holmesville Farm was valued at $734,000 at the time of separation; therefore, the remaining marital value is $691,500. The district court abused its discretion in classifying its marital value as $286,260 when awarding it to Arlan.

### (g) Summary of Property

When applying the principles of *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016), and *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017), we determine that the proper marital and nonmarital values of the properties are as follows:

| Property | Marital Value | Arlan's Nonmarital Value |
|---|---|---|
| Fertilizer Plant | $333,750 | $70,000 |
| Home Place | 385,000 | 0 |
| Lenard's Farm | 129,000 | 24,000 |
| Grandma's Farm | 236,000 | 0 |
| Holmesville Farm | 691,500 | 42,500 |

We reverse the district court's decision and remand the cause with direction to equitably divide the marital estate in accordance with the classifications above.

### 3. Machinery Sale Proceeds

Cindy assigns that the district court erred in failing to assign to Arlan the value of machinery he retained and that the court further erred by awarding Arlan auction proceeds attributable to encumbered premarital machinery at present-day auction price while ignoring the debt owed.

As to the property retained by Arlan, Cindy argues that he retained several pieces of equipment totaling $15,250, rather than having them sold at auction. However, she does not identify anywhere in the trial proceedings where this issue was raised and points to a comparison between preauction appraisals and the auction settlement sheet offered as exhibits as the basis for her assertion. Because Cindy did not direct the district court to this issue, the court could not have abused its discretion in failing to ascertain that there were items allegedly withheld by Arlan. This argument is without merit.

Cindy's argument in support of her assigned error regarding the award of auction proceeds for premarital machinery without regard to the debt owed is unclear. She appears to argue that the court erred in setting aside the sale proceeds of certain equipment to Arlan as premarital; however, this argument has no basis in the district court's math. Following the adjustment for the auction's commission and expenses, the machinery sale's net proceeds were $381,744.06. After trial, the parties stipulated that the sale proceeds would be applied to three bank loans and that the net proceeds from the auction would then be $249,328.77. The district court allocated that same stipulated amount as the proceeds from the machinery sale when allocating it to Arlan in its division of the marital estate. It did not deduct anything from that amount, neither Arlan's claimed premarital property value nor the costs of repairs to marital or premarital property. The district court treated the entirety of the machinery auction as marital property. Therefore, this argument fails.

## 4. CINDY'S PREMARITAL HOME PROCEEDS

Cindy assigns that the district court erred in finding only Arlan brought premarital property to the marriage and that the district court failed to recognize $104,700 of proceeds from the sale of her premarital real estate. In Cindy's proposed division of assets, she did not request credit for the sale proceeds; nor did she ask for it to be set off during her testimony.

Additionally, Arlan testified that after they were married, they lived in Cindy's house and he paid the mortgage payments for about a year. As such, there was insufficient evidence to prove how much of the $104,700 equity was premarital. We find no abuse of discretion in the district court's not recognizing Cindy's premarital house proceeds because she neither asked the court to recognize the sale proceeds nor met her burden to prove how much of them were premarital.

## 5. REIMBURSEMENT OF MARITAL ESTATE

[17] As an alternative assignment, Cindy argues the district court erred in not requiring Arlan to reimburse the marital estate for all marital funds used to service loans, insure, and pay taxes on nonmarital real estate. Cindy acknowledges in her brief that the case was not tried with reimbursement in mind and not all the evidence of marital spending was presented to the district court. An appellate court will not consider an argument or theory that is raised for the first time on appeal. *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021). Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id*. Cindy's assignment of error regarding reimbursement of the marital estate is disregarded as it was not first presented to the district court.

## 6. ALIMONY

Cindy assigned that the district court erred in failing to award alimony to her in lieu of income-producing property which she had requested at the time of trial. She argues that her acquiescence regarding the waiver of alimony was conditional based on the district court's awarding her income-producing farmland. However, during the trial, Cindy testified that she understood that alimony was not "much of a consideration" for the district court, and she stated that she was not requesting alimony. Given Cindy's own testimony that she was not

requesting alimony, we find no abuse of discretion in the district court's decision not to award it.

## 7. 2019 Crop Proceeds

[18] Cindy assigns that the district court erred in allowing Arlan to keep all of the 2019 crop proceeds as nonmarital property while refusing to award Cindy a compensating judgment for the use of marital moneys toward input costs to produce the 2019 crop. However, Cindy does not argue this assignment of error. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). Therefore, we do not address this assigned error.

## 8. Tax Liability

Cindy assigns that the district court erred in allocating an estimated tax liability to Arlan that was inconsistent with the parties' stipulation for trial. In its division of the marital estate, the district court allocated a 2020 tax liability to Arlan in the amount of $53,170.

The parties' pretrial stipulation stated:

> The parties agree that they will file joint federal and state tax returns for the tax year 2020 . . . . Any tax consequences resulting from the liquidation of the parties' machinery shall be considered a marital obligation to be allocated by the court as part of its division of the marital estate. Any other tax consequences from farming activities in the tax year 2020 will be the sole responsibility of [Arlan] who shall hold [Cindy] harmless therefrom.

Cindy's argument heading addressing this assigned error asserts that the court "erred in assigning a specific tax liability to Arlan when, at the time of trial, this had not been determined with certainty and was not in conformity with the parties' Stipulation for Trial." Brief for appellant at 38. It is not clear whether Cindy is arguing that the district court erred

in the number it used or in its interpretation of the stipulation's language.

To the extent that Cindy is arguing that the district court abused its discretion in relying upon the evidence presented by the parties as to the estimated tax liability, we reject this argument. The estimated tax liability of $47,500 for capital gains on the sale of the parties' machinery was prepared by Cindy's own accountants and offered into evidence. Arlan offered an estimated tax liability of $53,170, taking into account the taxes owed to the State of Missouri, the State of Nebraska, and the Internal Revenue Service. We therefore find no abuse of discretion by the district court in accepting the estimated tax liability of $53,170.

[19] To the extent that Cindy is arguing that the court failed to abide by the parties' stipulation by allocating the tax liability as a marital debt, that argument is refuted by the language of the stipulation. The Supreme Court has held that a trial court does not have discretion to compel parties seeking marital dissolution to file a joint income tax return; rather, that decision is best left to the parties to negotiate. *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012). That is what the parties did here. They stipulated to filing a joint tax return, and they agreed that tax consequences from the machinery auction would be a marital debt allocated by the court and that Arlan would be solely responsible for any other farming tax liability. Accordingly, the court allocated the capital gains from the auction to Arlan, along with all other estimated tax liability. By agreeing that any other tax consequences from the farming activities would be the sole responsibility of Arlan with the requirement that he hold Cindy harmless therefrom, the parties did not agree that the liability would not be allocated as a marital debt; rather, the parties agreed that Cindy would not be liable for its collection. See *id.* (outlining risks involved in filing joint returns).

We therefore conclude that the district court did not abuse its discretion or violate the parties' stipulation by making

Arlan solely responsible for the 2020 tax liability and allocating it to him as a marital debt.

## 9. Crop-Share Lease Income

Following trial, but prior to the court's issuing its decree, Arlan entered into crop-share agreements on three parcels of the land at issue. On April 23, 2021, Cindy filed a motion requesting the court to sequester the rents received. On May 21, the court issued its decree. An initial hearing on the motion to sequester was held on May 24, at which time Cindy's counsel offered into evidence the three lease agreements. However, counsel requested that the hearing be continued to June 14, when the other posttrial motions were scheduled to be heard.

Arlan argues that Cindy failed to provide a bill of exceptions containing the June 14, 2021, hearing and that therefore, we are without a sufficient record to address this argument. Although a supplemental bill of exceptions containing the June 14 hearing was filed with the Clerk of the Supreme Court and Court of Appeals on December 15 at Cindy's request, she failed to seek leave to do so. At the time the supplemental bill of exceptions was filed, Neb. Ct. R. App. P. § 2-105(B)(2)(a) (rev. 2021) stated that after the initial time period to file a request for a bill of exceptions has passed, "no request for a bill of exceptions may be filed without leave of the appellate court for good cause shown, which cause shall not be within a party's reasonable control."

Because Cindy did not seek leave to file a supplemental bill of exceptions, the supplemental bill is stricken and we do not consider its contents. Therefore, we are left with a copy of the motion to sequester rents, which requested simply that. Cindy argues on appeal that the district court abused its discretion in failing to award her an equitable share of the crop-share lease income, but our record includes no such request; rather, we have only a request that the rents be sequestered. Because the lease terminated on March 1, 2022, we find Cindy's motion to sequester moot.

### 10. Attorney Fees and Costs

[20-22] Cindy asserts that the district court erred in failing to award her attorney fees and costs. Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id.*

Cindy was not the prevailing party at trial, and Arlan did not file frivolous motions or delay trial. Arlan and Cindy agreed on the valuations of property. The issues presented to the district court were not particularly novel or difficult. Therefore, we find no abuse of discretion in the district court's decision to deny Cindy's request for attorney fees and costs.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's decree regarding alimony, attorney fees, tax liability, and the crop-share lease income. We reverse its classification and division of the marital assets and remand the cause with directions to equitably divide the marital estate in accordance with this opinion.

Affirmed in part, and in part reversed
and remanded with directions.